UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| LARRY DEITER, DIRECTOR OF INSURANCE OF THE STATE OF SOUTH DAKOTA, AS LIQUIDATOR OF RELIAMAX SURETY COMPANY IN LIQUIDATION;<br><br>Plaintiff,<br><br>vs.<br><br>XL SPECIALTY INSURANCE CO.,<br><br>Defendant. | 3:20-CV-03009-RAL<br><br><br>OPINION AND ORDER DENYING ABSTENTION AND GRANTING IN PART DISMISSAL |

Plaintiff Larry Deiter, Director of Insurance for the State of South Dakota, and as Liquidator of Reliamax Surety Company in Liquidation (the Liquidator), filed a complaint against Defendant XL Specialty Insurance Company (XL Specialty) in state court. Doc. 1-1. Based on the existence of federal diversity jurisdiction under 28 U.S.C. § 1332, XL Specialty removed the action to this Court. Doc. 1. XL Specialty then filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that the complaint failed to state a claim upon which relief may be granted. Doc. 7. The Liquidator opposed dismissal and filed a motion to remand on the basis of Burford abstention. Docs. 9, 10. This Court held a hearing on both pending motions. For the reasons explained below, this Court denies the motion to remand based on Burford abstention and grants in part the motion to dismiss.

**I.      Facts Alleged in Complaint and from Materials Attached to Complaint**

1

In ruling on a Rule 12(b)(6) motion to dismiss, courts are to "accept the plaintiff's specific factual allegations as true but are not required to accept a plaintiff's legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010). "Further, documents attached to or incorporated within a complaint are considered part of the pleadings, and courts may look to such documents 'for all purposes,' Fed. R. Civ. P. 10(c), including to determine whether a plaintiff has stated a plausible claim." Id. See also Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (noting that "courts are not strictly limited to the four corners of a complaint" and may consider "exhibits attached to the complaint whose authenticity is unquestioned" (internal quotation marks and citations omitted)). Thus, this Court draws the facts[1] from the Liquidator's complaint, which is quite terse, and from the attached exhibits to the Liquidator's complaint, which are extensive. Doc. 1-1 at 2–109.

The Liquidator is court appointed pursuant to S.D.C.L. § 58-29B-42 under an order of liquidation of Reliamax Surety Company (RSC). Doc. 1-1 at ¶¶ 1–2. Under S.D.C.L. § 58-29B-42, the Liquidator "shall be vested by operation of law with the title to all property, contracts, and rights of action…of the insurer ordered liquidated [here RSC]…as of the entry of the final order of liquidation." Doc. 1-1 at ¶ 3; S.D.C.L. § 58-29B-42. Another statute lists the powers of the Liquidator, which includes the powers to: "(13) Prosecute any action which may exist on behalf of the creditors, members, policyholders, or shareholders of the insurer against any officer of the insurer, or any other person;…(19) Exercise and enforce all the rights, remedies, and powers of any creditor, shareholder, policyholder, or member…." S.D.C.L. § 58-29B-49. Doc. 1-1 at ¶ 4.

---

[1] In ruling on a Rule 12(b)(6) motion to dismiss, this Court of course is not making any factual findings.

The insolvent insurer RSC is and was a wholly-owned subsidiary of ReliaMax Holding Company (RHC), a Delaware corporation; RSC has several other sister companies that likewise are subsidiaries of RHC. Doc. 1-1 at ¶ 5. Before entry of the liquidation order, RHC procured and was party to, for itself and for the benefit of its subsidiaries including RSC, two insurance policies providing directors and officers liability insurance coverage. Doc. 1-1 at ¶¶ 6, 13–71, 73–96. The primary policy for directors and officers liability insurance coverage for the policy period of July 1, 2017 through July 1, 2018 was with Pioneer Special Risk Insurance Services, Inc. (Pioneer). Doc. 1-1 at ¶¶ 7, 13–72. Defendant XL Specialty issued a policy for excess insurance coverage for directors and officers with the policy period of July 1, 2017 through July 1, 2018. Doc. 1-1 at ¶¶ 8, 73–93. The Liquidator's petition for liquidation of RSC was filed in the final month of the policy period on or about June 12, 2018. Doc. 1-1 at ¶ 11. The order of liquidation entered on June 27, 2018, just days before the end of the policy period in the XL Specialty policy. Doc. 1-1 at 8–11.

The XL Specialty policy provides a $2 million limit of liability above the $3 million underlying insurance coverage with Pioneer. The XL Specialty policy is clear that it is a claims-made policy and only applies to claims first made during the policy period. Doc. 1-1 at 73, 91. The XL Specialty policy incorporates the terms and conditions of the underlying Pioneer policy and defines the "Insured" as "those persons or organizations designated as insureds in the Underlying Insurance." Doc. 1-1 at 91. The underlying Pioneer policy in turn is issued to RHC, Doc. 1-1 at 13, and defines the insured "Company" to include "the Parent Company" and "any Subsidiary." Doc. 1-1 at 17. "Insureds" in the Pioneer policy is defined to mean the Company and the Insured Persons. Doc. 1-1 at 20. In turn, "Insured Persons" are defined in the underlying Pioneer policy to include "all persons who were, now, are, or shall be directors, officers, or the risk managers of the Company." Doc. 1-1 at 19. Finally, with regard to pertinent definitional provisions in the

underlying Pioneer policy, "Wrongful Act" is defined to mean "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty…by any of the Insured Persons, while acting in their capacity as such, or any matter claimed against any of the Insured Persons solely by reason of serving in such capacity." Doc. 1-1 at 24. The underlying Pioneer policy does exclude any claim "by, on behalf of, or at the direction of the Company, an Insured Person in any capacity, or by past, present, or future security holder, partner, or member of the Company, except and to the extent that:…2. Such Claim is brought in the event of the appointment of a trustee, examiner, receiver, liquidator, conservator, rehabilitator, or similar official." Doc. 1-1 at 25 (emphasis added).

On November 1, 2018, the Liquidator sent to XL Specialty and Pioneer a letter characterized as a notice of claim. In the letter, the Liquidator stated:

> Numerous Wrongful Acts by the Officers and Directors of [RHC] are being investigated. The most significant Wrongful Act of the Officers and Directors of [RHC] was their continuous advances from [RSC] of more than $21 million, without the means of repayment.

Doc. 1-1 at 98. The Liquidator's letter continued:

> This immediate claim is to recover these Wrongful advances paid in an amount in excess of $21 million. A claim has been filed under the Primary Policy, and given the size of the claim, it will exhaust the $3 million available policy limit.

Doc. 1-1 at 98–99.

XL Specialty's policy was a claims-made policy through July 1, 2018, but the Liquidator in the complaint cites S.D.C.L. § 58-29B-56, which provides in relevant part:

> If by any agreement, a period of limitation is fixed…for filing any claim, proof of a claim, proof of loss, demand, notice, or the like…, and where in any case the period had not expired at the date of the filing of the petition, the liquidator may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the insurer, within a period of one-hundred-eighty days subsequent to the entry of any order for liquidation, or within such further period as is shown to the satisfaction of the court not to be unduly prejudicial to the other party.

4

Doc. 1-1 at ¶ 10 (quoting S.D.C.L. § 58-29B-56). The November 1, 2018 letter was within 180 days of both the Liquidator's petition of June 12, 2018, and the order for liquidation of June 27, 2018. Doc. 1-1 at ¶¶ 11–12.

The Liquidator's complaint neither references nor attaches any response from XL Specialty, but the Liquidator's next letter (dated October 21, 2019) to XL Specialty implies that XL Specialty took issue with the timeliness of the November of 2018 notice and whether the coverage period of the XL Specialty policy had lapsed. That subsequent letter from the Liquidator is dated October 21, 2019. Doc. 1-1 at 101–109. In that October of 2019 letter, the Liquidator asserts that the timeliness of its initial notice of claim from November of 2018 references certain policy provisions and South Dakota statutes under which the Liquidator believed there should be coverage, and provided a more involved summary of what the Liquidator claimed to be wrongful conduct of directors and officers of RHC and RSC. Doc. 1-1 at 101–109. The wrongful conduct alleged in the Liquidator's October of 2019 letter included bonus compensation authorized by the board of directors of RHC to RSC's chief executive officer of $540,674 during a time of RSC's insolvency; using funds of RSC to finance startup ventures by officers of RHC and thereby robbing RSC of cash; concealment by RSC's chief executive officer of certain business opportunities to protect his ownership stake from dilution thereby frustrating critical efforts to raise capital to replace monies wrongfully taken from RSC; misleading and erroneous accounting management resulting in a later adjustment of RSC's financial statements by a negative $38 million; abuse of intra-organization borrowing power, relating to the prior notice of some $20 million borrowed from RSC by RHC without the capability to repay; and a claimed manipulation of certain loan servicing, among other

possible claims.[2] Doc. 1-1 at 101–109. No response from XL Specialty appears in any attachment to the complaint.

The Liquidator claims that XL Specialty "has wrongfully denied coverage under the XL policy and has refused to pay any portion of the policy limits towards such claims." Doc. 1-1 at ¶ 16. The complaint seeks a declaratory judgment in general terms, Doc. 1-1 at ¶ 17, and the prayer seeks declarations "that XL is liable under the XL policy for the claims asserted in the notices attached as exhibits to this complaint" [and] "that the liquidator is the sole proper claimant under the XL policy and S.D.C.L. Chapter 58-29B." Doc. 1-1 at 6. The Liquidator also claims that the conduct of XL Specialty constitutes bad faith, entitling the Liquidator to compensatory and punitive damages, as well as attorney's fees for XL Specialty's allegedly vexatious and unreasonable refusal to pay. Doc. 1-1 at 5–6.

## II.   Motion to Abstain

The Liquidator filed a motion to remand on the basis of abstention, invoking Burford v. Sun Oil. Co., 319 U.S. 315 (1943). The Liquidator argues that the South Dakota statutes for liquidating insurers are a comprehensive state law scheme and indeed require suit to be brought in state court for a particular South Dakota county. S.D.C.L. § 58-29B-7; see generally S.D.C.L. § 58-29B. The Liquidator argues that an exercise of federal jurisdiction here will disrupt South Dakota's efforts to establish a coherent and consistent policy applicable to liquidation of insolvent insurers. Doc. 11 at 14. The Liquidator contends that this case is not a "run of the mill" declaratory judgment action involving contract interpretation, but involves a "need to interpret the South Dakota liquidation acts

---

[2] During oral argument, the parties informed this Court that the Liquidator had served a summons and complaint in a state court proceeding against directors and officers asserting such claims. Pioneer, from which RHC reportedly had purchased tail coverage beyond the policy period, is defending the action.

statutes as well." Doc. 11 at 16–17. XL Specialty opposes the motion to remand based on abstention, arguing among other things that Burford abstention does not apply to actions such as this for legal relief and that the requisites of Burford abstention are not met. Doc. 13.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 (1976). "[F]ederal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest." Quackenbush v. All State Ins. Co., 517 U.S. 706, 716 (1996) (internal quotations omitted). However, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water, 424 U.S. at 813. That is, abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Id.

In Burford, the Supreme Court of the United States recognized federal court abstention from exercising jurisdiction when necessary to avoid impermissibly disruptive effects on state policy. Burford, 319 U.S. at 332–34. In Burford, the plaintiff was challenging the reasonableness of a Texas state commission's permit to drill oil wells, which the Supreme Court viewed as involving a complex state regulatory scheme related to the conservation of oil and gas properly left for the state of Texas. Id. at 317–20. Because the plaintiff's challenge involved "basic problems of Texas policy," the Supreme Court held that it was best for Texas state courts to handle the case and that the district court should have abstained from exercising federal jurisdiction. Id. at 332–34.

The Supreme Court has issued two subsequent decisions on Burford abstention that refine the doctrine. In New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350 (1989) (known as "NOPSI"), the Supreme Court stated:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative

>agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; or (2) where the "exercise of federal review of the question in the case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

Id. at 361 (quoting from Colorado River Water, 424 U.S. at 814). The Supreme Court in NOPSI, reaffirmed that abstention is "the exception, not the rule," and observed that Burford "does not require abstention whenever there exists [a complex state process], or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." Id. at 359, 362 (citing Colorado River Water, 424 U.S. at 815–16).

More recently, the Supreme Court in Quackenbush clarified that the purpose of Burford abstention is to ensure that when complex state regulations exist to regulate an "essentially local problem," states are protected from federal court review. Quackenbush, 517 U.S. at 728. The Supreme Court in Quackenbush characterized Burford abstention as an "extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." Id. at 728 (citation omitted). The Supreme Court in Quackenbush also made clear that only when the federal court is sitting in equity, as opposed to a suit involving a claim for damages, can it decline to exercise jurisdiction, dismiss a suit, or remand the case to a state forum. Id. at 731. ("[f]ederal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary."). That is, Burford abstention is not an option when the suit is an action at law for damages. Id. at 718–20.

The Liquidator's complaint seeks not only a declaratory judgment but also legal damages in the form of compensatory and punitive damages as well as attorney's fees under a claim alleging bad faith through a wrongful denial of coverage and an alleged vexatious refusal to pay. Doc. 1-1 at ¶¶ 16–19. To the extent the complaint is seeking compensatory and punitive damages, Burford

8

abstention simply cannot apply. Quackenbush, 517 U.S. at 731; Casey v. FDIC, 583 F.3d 586, 592 (8th Cir. 2009) ("Burford abstention is appropriate only with respect to equitable claims.") Realizing this problem with its Burford abstention request, the Liquidator in briefing characterizes the complaint as "primarily" seeking discretionary or declaratory relief. Doc. 14 at 2–3.

The United States Court of Appeals for the Eighth Circuit has limited Burford abstention to when "a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge in the application of complicated state laws." Melahn v. Pennock Ins., Inc., 965 F.2d 1497, 1506 (8th Cir. 1992) (quoting Bilden v. United Equitable Ins. Co., 921 F.2d 822, 825 (8th Cir. 1990)). In Melahn, the Eighth Circuit noted that its own precedent demanded a narrow view of Burford abstention. Id. at 1505. Indeed, the Eighth Circuit had previously stated in Bilden that "federal courts are not required to abstain when the criteria for abstention are met." 921 F.2d at 826. The Eighth Circuit in Melahn noted the holding in Bilden and reversed a district court's Burford abstention order in a case removed from state court filed by an insolvent insurer's receiver against an agent to recover allegedly unearned commissions and unearned premium payments. Melahn, 965 F.2d at 1499–1500, 1507. In Melahn, the Eighth Circuit specifically distinguished and declined to follow a case the Liquidator relies heavily upon—Grimes v. Crown Life Ins. Co., 857 F.2d 699 (10th Cir. 1988)—because the Grimes decision preceded NOPSI and adopts a much broader view of abstention than existing Eighth Circuit caselaw.[3] Melahn, 965 F.2d at 1505, 1507.

---

[3] Although the Liquidator seems to at least acknowledge that the Eighth Circuit was dismissive of Grimes, Doc. 11 at 11, it still contends that Grimes is helpful caselaw because the Eighth Circuit analyzed the Grimes factors as they applied to the facts in Melahn. Doc. 11 at 11. But notably, the Eighth Circuit found that three of the four Grimes factors warranted abstention and nonetheless held that the district court abused its discretion by abstaining in that case. Melahn, 965 F.3d at 1504, 1507. Thus, while the Eighth Circuit may have applied the Grimes factors, that exercise did little to influence its decision.

9

The question then is whether this Court should abstain from the portion of the complaint seeking a declaratory judgment action involving the coverage or lack of coverage of XL Specialty over claims pressed by the Liquidator. To justify Burford abstention, the declaratory judgment action under Eighth Circuit precedent must involve "a complex regulatory scheme supervised by state courts and serving important state interests," and be such that "resolution of the case demands specialized knowledge in the application of complicated state laws." See Melahn, 965 F.2d at 1506. Determining whether the Liquidator gave timely notice under the policy might involve application of a South Dakota statute enlarging the time in a policy for a Liquidator to do so, but does not implicate a complex state regulatory scheme. See S.D.C.L. § 58-29B-56. A declaratory judgment on a coverage question is not somehow unique to the state's regulatory scheme, but a familiar dispute arising within a federal district court's diversity jurisdiction. See Emp. Mut. Cas. Co. v. Bryant Lake Sanitary Dist., 446 F. Supp. 3d 557, 559 (D.S.D. 2020) (deciding whether an insurance company was entitled to a declaratory judgment that coverage did not apply); Midland Nat'l Life Ins. Co. v. Morrison, No. 3:16-cv-03002-RAL, 2017 WL 3534995 (D.S.D. Aug. 16, 2017) (determining whether an insurance company could rescind the insurance policy and obtain a declaratory judgment that it had no obligations under the policy other than to refund premiums paid); Dziadek v. Charter Oak Fire Ins. Co., 213 F. Supp. 3d 1150 (D.S.D. 2016). Moreover, resolution of such an issue does not demand some sort of specialized knowledge and application of complicated state laws. Accordingly, the motion to remand based on Burford abstention is denied.

### III.  Motion to Dismiss

XL Specialty has filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556. "[C]onclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in the original) (citation and internal quotation marks omitted). Whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and commonsense." Iqbal, 556 U.S. at 679. As stated earlier in this decision, in ruling on a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true, thought it need not accept the legal conclusions. Brown, 628 F.3d at 459. Documents attached to or incorporated within the complaint are considered as part of the pleadings and may be used in determining whether a plaintiff has stated a plausible claim. Id.

The Liquidator's complaint does not separately enumerate causes of action. The complaint, however, contains a claim for declaratory judgment against XL Specialty regarding wrongful denial of coverage, Doc. 1-1 at ¶ 16, as well as legal claims for bad faith, compensatory and punitive damages, and attorney's fees for vexatious refusal to pay under the insurance policy. Doc. 1-1 at ¶¶ 16–19. In briefing, the Liquidator seems to recognize that the claims alleging bad faith and

vexatious failure to pay are premature, explaining that they were joined with the declaratory judgment claim out of fear of a later bar of res judicata.[4] Doc. 14 at 5.

In this diversity jurisdiction action, no party contests that South Dakota law governs. The Liquidator cites to South Dakota statutes for its authority and argues from South Dakota caselaw, and XL Specialty likewise invokes the substantive law of South Dakota in arguing that the Liquidator has stated no viable claim. Under South Dakota law, the Liquidator at this time can state no viable claim for bad faith or vexatious refusal to pay.

The controlling case in South Dakota is Trouten v. Heritage Mutual Ins. Co., 632 N.W.2d 856 (S.D. 2001). In Trouten, a plaintiff slipped and fell on a sidewalk abutting a business insured by the defendant insurer and incurred medical and hospital expenses due to injuries from the fall. The insurer had issued a policy to the business providing medical expense coverage for bodily injury caused by an accident "next to the premises you own or rent...regardless of fault." Id. at 857. The plaintiff made a claim to the insurer for medical and hospital expenses, which was denied. The plaintiff then sued the insurer directly, both for the contract benefits and under a bad faith theory. Id.

---

[4] Res judicata "serves as claim preclusion to prevent relitigation of an issue actually litigated or which could have been properly raised and determined in a prior action." Mack v. Trautner, 763 N.W.2d 121, 123 (S.D. 2009) (quoting Barnes v. Matzner, 661 N.W.2d 372, 377–78 (S.D. 2003)). See also Lawrence Cty. v. Miller, 786 N.W.2d 360, 369–70 (S.D. 2010) (noting that "[t]he preclusive effect of res judicata extends to 'an *issue actually litigated or which could have been properly raised and determined* in a prior action.'") (emphasis in the original). Necessarily the claim must be ripe for res judicata or its companion doctrine collateral estoppel to apply. Danforth v. City of Yankton, 25 N.W.2d 406, 412 (S.D. 1946) (providing that res judicata will not apply when there is not a justiciable controversy between the parties before the court); Rawe v. Liberty Mut. Fire Ins. Co., 462 F.3d 521, 529–30 (6th Cir. 2006) (noting that res judicata does not apply to claims not yet ripe at the time the first suit is filed). The Liquidator did not need to join claims that, as explained herein, were not ripe for adjudication under South Dakota law to avoid res judicata or collateral estoppel. Further, nothing in this Opinion and Order bars the Liquidator from pursuing those legal claims if the Liquidator obtains judgment against the directors and officers exceeding the Pioneer policy limit of liability.

12

The Supreme Court of South Dakota in Trouten split 3-2 in deciding that the case as a whole should be dismissed; the Supreme Court was unanimous in concluding that the plaintiff had no cause of action for bad faith against the insurer. The majority opinion in Trouten noted that "no statute in South Dakota...allows a direct action by an injured person against another's liability insurer absent a judgment having been first obtained against the tortfeasor." Id. at 858. The majority in Trouten referred to S.D.C.L. § 58-23-1 for the proposition that a "direct action [is] allowed when an execution on a judgment against the insurer is returned unsatisfied." Id.; see S.D.C.L. § 58-23-1. The majority opinion then noted:

> As a general rule there is no privity between an injured person and a tortfeasor's liability insurer, and the injured person has no right of action at law against the insurer[.] 44 Am.Jur.2d Ins. § 1445 (1982). However, there are exceptions to this rule where a statute authorizes such suits or where the injured person is considered to be a third-party beneficiary of the contract.

Id. at 858. The majority opinion in Trouten discussed a split in state court cases outside of South Dakota on whether a plaintiff can be a third-party beneficiary under medical payments provisions that do not require a showing of fault. Id. at 860–61. However, based on S.D.C.L. § 58-23-1, the majority followed the rationale in Zegar v. Sears Robuck & Co., 570 N.E.2d 1176 (Ill. App. Ct. 1991), that "absent an express or clearly implied right to sue [an insurer] directly for the medical expenses, [an injured person] cannot maintain an action to recover medical expenses directly from the [insurer], at least until after settlement, adjudication, or release of claim." Trouten, 632 N.W.2d at 861 (quoting Zegar, 570 N.E.2d at 1180). Although two of the justices in Trouten dissented from that conclusion, the Supreme Court of South Dakota was unanimous in directing dismissal of the bad faith claim. The court restated the longstanding rule in South Dakota that "conduct that is merely a breach of contract is not a tort." Trouten, 632 N.W.2d at 864 (cleaned up and quoting Weeg v. Iowa Mutual Ins. Co., 141 N.W.2d 913, 916 (1966)). Rather, there must exist a relationship

13

akin to a fiduciary one between the insured and the insurer. Trouten, 632 N.W.2d at 864. In Trouten, the injured person did not have a relationship with the insurer of a fiduciary nature, and the insurer's first duty was to its own insured and not the injured person. Id. The court in Trouten unanimously rejected any sort of bad faith claim in a situation where the insurance company would be required to serve masters with antagonistic interests. Id. The Trouten unanimous decision concluded "we decline to place the insurer in the impossible position of having to choose its loyalty since the insured can always be sued by the injured party for any and all damages flowing from his actions." Id.

Under Trouten, the Liquidator can state no claim for bad faith and vexatious refusal to pay before obtaining a judgment that remains unsatisfied. Allowing any bad faith action at this time by the Liquidator against XL Specialty could put XL Specialty in the predicament of having to serve two masters with antagonistic interests—defending the directors and officers to whom XL Specialty has a direct contractual relationship against the Liquidator's claims[5] and, in the Liquidator's view, treating the Liquidator as XL Specialty's fiduciary as well under the policy. Nothing in the liquidation statutes of S.D.C.L. § 58-29B displaces S.D.C.L. § 58-23-1 or Trouten. The Liquidator's claim for bad faith and vexatious refusal to pay must be dismissed because it is not viable at this time under South Dakota law.

XL Specialty relies upon Trouten to argue for dismissal of all of the Liquidator's claims. Indeed, as quoted above, Trouten recognized the general rule "there is no privity between an injured person and the tortfeasor's liability insurer, and the injured person has no right of action at law against the insurer." Id. at 858 (quoting 44 Am.Jur.2d Ins. § 1445 (1982)). The exception to the

---

[5] This Court realizes that XL Specialty may have disclaimed coverage for any claim, but it would be the directors and officers, and not the claimant Liquidator, who might have a claim for bad faith and vexatious denial of coverage.

rule exists when the allegedly injured claimant is considered a third-party beneficiary of the contract. Trouten, 632 N.W.2d at 858; see also S.D.C.L. § 53-2-6. The Liquidator is in a different position than the plaintiff in Trouten who simply fell outside of an insured business. The Liquidator, rather, by operation of South Dakota statute is vested "with the title to all property, contracts, and rights of action...of the insurer [here RSC] ordered liquidated." S.D.C.L. § 58-29B-42. The Liquidator not only may prosecute any action of "creditors, members, policyholders, or shareholders of the insurer against any officer of the insurer or any other person;" but also can "exercise and enforce all the rights, remedies, and powers of any creditor, shareholder, policyholder, or member." S.D.C.L. § 58-29B-49.

The XL Specialty policy incorporates the terms of the underlying directors and officers policy of Pioneer, and under those terms, as explained above, RSC is an Insured. Doc. 1-1 at 13, 17, 19, 20, 91. The underlying Pioneer insurance policy excludes coverage for any claim made on behalf of or at the direction of an insured, but has an exception to that exclusion for claims "brought in the event of the appointment of a...liquidator...or similar official." Doc. 1-1 at 25. Thus, it is at least plausible under the allegations of the complaint and the attachments thereto that the Liquidator has a viable declaratory judgment action that excess insurance coverage exists under the XL Specialty policy if and when the Liquidator obtains judgment on a covered claim exceeding the limits in the underlying Pioneer directors and officers policy. In short, the Liquidator at least plausibly is a third-party beneficiary, and indeed seemingly in the position of being an Insured itself as successor to RSC, under the XL Specialty policy.

Yet the Liquidator's complaint is less than entirely clear on what it is seeking as a declaratory judgment. Paragraph 16 of the complaint alleges "XL has wrongfully denied coverage under the XL policy and has refused to pay any portion of the policy limits towards such claims."

Doc. 1-1 at ¶ 16. Paragraph 17 then generally avers a legal conclusion that there is "an actual, genuine controversy and dispute resolvable by declaratory judgment of this court." Doc. 1-1 at ¶ 17. The prayer of the complaint specifies two requests for declaratory judgment:

1. Determining and declaring that XL is liable under the XL policy for the claims asserted in the notices attached as exhibits to this complaint.
2. Determining and declaring that the Liquidator is a sole proper claimant under the XL policy and S.D.C.L. Chapter 58-29B.

Doc. 1-1 at 6. It is at least plausible that part of what the Liquidator seeks is a declaratory judgment that the notices given by the Liquidator were sufficient in combination with S.D.C.L. § 58-29B (and particularly § 58-29B-56) to be a timely claim under the XL Specialty claims-made excess policy or that whatever ground XL Specialty gave for disclaiming coverage was improper. There could be a case and controversy concerning those matters, but no letter from XL Specialty disclaiming coverage is attached to the complaint or made part of the record at this time. The complaint frames such issues at best poorly and by inference. There are no other viable or plausible ripe claims pleaded in the complaint and attachments thereto.

Because there is a plausible claim for declaratory judgment that seems to exist based on the complaint and materials attached and because the complaint itself at best poorly frames the issue, this Court grants the motion to dismiss only in part at this time. This Court grants the Liquidator leave for a period of twenty-one days to file an amended complaint better framing any issue plausibly ripe for declaratory judgment, if the Liquidator wishes to do so. If the Liquidator does not wish to seek a declaratory judgment at this time, the Liquidator should so notify the Court through a filing in the CM/ECF system. This Court then will grant dismissal of the case without prejudice to refiling at a later time a declaratory judgment on those issues or any other claim that the Liquidator might later have against XL Specialty.

**IV.   Conclusion**

For the reasons explained above, it is hereby

ORDERED that Plaintiff's motion to remand based on Burford abstention, Doc. 10, is denied. It is further

ORDERED that Defendant's Motion to Dismiss, Doc. 7, is granted with regard to the bad faith and vexatious refusal to pay claims and granted with regard to the claim for declaratory judgment that the Liquidator's assertions are covered claims that must be paid now by XL Specialty. If the Liquidator wishes to seek a declaratory judgment on whether the notice provided by the Liquidator to XL Specialty was sufficient under the claims-made policy or whether any denial of coverage by XL Specialty was or was not appropriate, the Liquidator has leave for a period of twenty-one days to file an amended complaint to frame those issues. If the Liquidator does not wish to proceed to seek a declaratory judgment on those questions, the complaint then will be dismissed without prejudice to the Liquidator later filing such a declaratory judgment action or making other claims it might have against XL Specialty at a later time.

DATED this 21st day of September, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE