UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| LARRY DEITER, DIRECTOR OF INSURANCE OF THE STATE OF SOUTH DAKOTA, AS LIQUIDATOR OF RELIAMAX SURETY COMPANY IN LIQUIDATION,<br><br>Plaintiff,<br><br>vs.<br><br>XL SPECIALTY INSURANCE CO.,<br><br>Defendant. | 3:20-CV-03009-RAL<br><br><br>OPINION AND ORDER CERTIFYING QUESTION TO SUPREME COURT OF SOUTH DAKOTA |

Plaintiff Larry Deiter, Director of Insurance for the State of South Dakota, and as Liquidator for Reliamax Surety Company in Liquidation (the Liquidator), filed this lawsuit against Defendant XL Specialty Insurance Company (XL Specialty). Doc. 48. Among other things, the Liquidator seeks a declaratory judgment that the Liquidator gave timely and sufficient notice of claims and that such claims are covered under an insurance policy issued by XL Specialty. Doc. 48. After this Court granted in part XL Specialty's motion to dismiss thereby narrowing issues in this case, Doc. 20, the Liquidator amended its complaint and filed a motion for judgment on the pleadings, Doc. 25. XL Specialty filed a motion for summary judgment. Doc. 31. The Liquidator then filed a cross motion for summary judgment in the alternative to his motion for judgment on the pleadings. Doc. 41.

The pleadings and pending motions frame a novel legal issue under a South Dakota statute. Namely, the issue is whether SDCL § 58-29B-56, in granting the Liquidator 180 additional days

1

from the entry of the order of liquidation to give notice of claim, thereby enlarges the coverage period of a claims-made policy despite no optional extension coverage being purchased. This Court concludes that it is appropriate to certify this question to the Supreme Court of South Dakota and sets forth the relevant facts and law below.

## I. Facts[1]

The insolvent insurer ReliaMax Surety Company (RSC) is and was a wholly owned subsidiary of ReliaMax Holding Company (RHC), a Delaware corporation. Doc. 48 at ¶ 10. Before entry of the liquidation order, RHC procured and was party to, for itself and for the benefit of its subsidiaries including RSC, two insurance policies providing directors and officers liability insurance coverage. Doc. 33 at ¶ 1; Doc. 36 at ¶ 1; Doc. 48 at ¶ 11. The primary policy for directors and officers liability insurance coverage for the policy period of July 1, 2017, through July 1, 2018, was with Pioneer Special Risk Insurance Services, Inc. (Pioneer). Doc. 48 at ¶¶ 12, 14. RHC purchased an optional extension period to extend the policy period of the Pioneer policy through July 1, 2021. Doc. 34-5.

Defendant XL Specialty issued a policy for excess insurance coverage for directors and officers for claims made during the policy period of July 1, 2017, through July 1, 2018. Doc. 33 at ¶ 4; Doc. 36 at ¶ 4; Doc. 48 at ¶¶ 13–14. Neither RHC nor the Liquidator paid the premium[2] for an optional extension period to extend the XL Specialty claims-made policy period beyond

---

[1] Under SDCL § 15-24A-4(2), a certification order shall set forth "[a] statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose." SDCL § 15-24A-4(2). This Court takes the facts primarily from XL Specialty's Statement of Undisputed Facts, Doc. 33, and the Liquidator's response thereto, Doc. 36. The Court also takes the facts from the second amended complaint and accompanying attachments to the first and second amended complaints. See Docs. 23, 48.

[2] The premium for the policy period July 1, 2017, to July 1, 2018, was $60,000, and the premium for the optional extension period would have been $120,000. Doc. 34-1 at 2; Doc. 34-2 at 3, 23.

July 1, 2018. Doc. 33 at ¶ 17; Doc. 36 at ¶ 17. The Liquidator's petition for liquidation of RSC was filed in the final month of the XL Specialty policy period on or about June 12, 2018. Doc. 33 at ¶ 15; Doc. 36 at ¶ 15. The order of liquidation entered on June 27, 2018, just days before the end of the policy period in the XL Specialty policy. Doc. 33 at ¶ 15; Doc. 36 at ¶ 15.

The XL Specialty policy provides a $2 million limit of liability above the $3 million underlying insurance coverage with Pioneer. Doc. 33 at ¶ 1; Doc. 36 at ¶ 1. The XL Specialty policy is clear that it is a claims-made policy and only applies to claims first made during the policy period. Doc. 23-3 at 1, 19; Doc. 33 at ¶ 2; Doc. 36 at ¶ 2. The XL Specialty policy incorporates the terms and conditions of the underlying Pioneer policy and defines the "Insured" as "those persons or organizations designated as insureds in the Underlying Insurance." Doc. 23-3 at 19; Doc. 33 at ¶ 3; Doc. 36 at ¶ 3. The underlying Pioneer policy in turn is issued to RHC, Doc. 23-2 at 1, and defines the insured "Company" to include "the Parent Company" and "any Subsidiary." Doc. 23-2 at 5; Doc. 33 at ¶ 7; Doc. 36 at ¶ 7. "Insureds" in the Pioneer policy include the Company and the Insured Persons. Doc. 23-2 at 8; Doc. 33 at ¶ 7; Doc. 36 at ¶ 7. In turn, "Insured Persons" in the underlying Pioneer policy include "all persons who were, now are, or shall be directors, officers or risk managers of the Company." Doc. 23-2 at 7. Finally, with regard to pertinent definitional provisions in the underlying Pioneer policy, "Wrongful Act" is defined to mean "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty . . . by any of the Insured Persons, while acting in their capacity as such, or any matter claimed against any of the Insured Persons solely by reason of their serving in such capacity." Doc. 23-2 at 12; Doc. 33 at ¶ 8; Doc. 36 at ¶ 8.

The underlying Pioneer policy, and in turn the XL Specialty policy, excludes any claim "by, on behalf of, or at the direction of the Company, any Insured Person in any capacity or by

3

past, present or future security holder, partner, or member of the Company, *except and to the extent that*: . . . 2. Such Claim is brought in the event of the appointment of a trustee, examiner, receiver, liquidator, conservator, rehabilitator or similar official." Doc. 23-2 at 12–13 (emphasis added). Thus, the policy does not exclude coverage per se for claims the Liquidator might have against insured directors and officers.

Four months after the claims-made policy period under the XL Specialty policy ended, on November 1, 2018, the Liquidator sent to XL Specialty and Pioneer a letter to provide notice of a claim. In the letter to XL Specialty, the Liquidator stated:

> Numerous Wrongful Acts by the Officers and Directors of [RHC] are being investigated. The most significant Wrongful Act of the Officers and Directors of [RHC] was their continuous advances from [RSC] of more than $21 million dollars, without the means for repayment.

Doc. 23-5 at 1; Doc. 33 at ¶ 18; Doc. 36 at ¶ 18. The Liquidator's letter continued:

> This immediate claim is to recover these Wrongful advances paid in an amount in excess of $21 million. A claim has been filed under the Primary Policy, and given the size of the claim, it will exhaust the $3 million available policy limit.

Doc. 23-5 at 1–2; Doc. 33 at ¶ 18; Doc. 36 at ¶ 18.

Pioneer did not contest the timeliness of the Liquidator's notice; after all, RHC had paid Pioneer for optional extension coverage. XL Specialty, however, in a response letter dated November 28, 2018, stated, "Based upon the limited information provided, it does not appear that this matter constitutes a Claim first made in the Policy Period, as required by the Insuring Agreement of the XL Policy."[3] Doc. 23-7 at 1.

---

[3] The letter from XL Specialty in the CM/ECF record is a letter addressed to Michael J. FitzGibbons, who appears to have been the Liquidator appointed to RSC at the time. Docs. 23-6, 23-7.

4

To counter XL Specialty's position that the notice of claim was untimely under the claims-made policy through July 1, 2018, the Liquidator relies on SDCL § 58-29B-56, which can be parsed to read:

> If, by any agreement, a period of limitation is fixed for . . . proceeding upon any claim, or for filing any claim, proof of claim, proof of loss, demand, notice, or the like, . . . and where in any such case the period had not expired at the date of the filing of the petition, the liquidator may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the insurer, within a period of one hundred eighty days subsequent to the entry of an order for liquidation, or within such further period as is shown to the satisfaction of the court not to be unfairly prejudicial to the other party.

Doc. 48 at ¶ 15. The November 2018 notice of claim letter was within 180 days of both the Liquidator's petition of June 12, 2018, and the order for liquidation of June 27, 2018. Doc. 48 at ¶ 19.

Subsequent letters from the Liquidator to XL Specialty dated April 4, 2019, and October 21, 2019, elaborate on the initial notice of claim from November 2018. Doc. 23-6; Doc. 48 at ¶ 22. The April 4, 2019 letter referenced the "MIT Litigation," a fraud and deceit lawsuit filed in 2018 in state court against RSC, RHC, and their directors and officers by Massachusetts Institute of Technology Federal Credit Union. Docs. 23-6, 43-1. The letter dated October 21, 2019, discussed certain policy provisions and South Dakota statutes under which the Liquidator believed there should be coverage, and provided a more involved summary of what the Liquidator claimed to be wrongful conduct of directors and officers of RHC and RSC. Doc. 23-6 at 3–11. The wrongful conduct alleged in the October 2019 letter included bonus compensation authorized by the board of directors of RHC to RSC's chief executive officer of $540,674 during a time of RSC's insolvency; using funds of RSC to finance startup ventures by officers of RHC and thereby robbing RSC of cash; concealment by RSC's chief executive officer of certain business opportunities to protect his ownership stake from dilution thereby frustrating critical efforts to raise capital to

replace monies wrongfully taken from RSC; misleading and erroneous accounting management resulting in a later adjustment of RSC's financial statements by a negative $38 million; abuse of intra-organization borrowing power, relating to the prior notice of some $20 million borrowed from RSC by RHC without the capability to repay; and a claimed manipulation of certain loan servicing, among other possible claims. Doc. 23-6 at 3–11.

Under SDCL § 58-29B-34, the Liquidator has the right to pursue all appropriate legal remedies on behalf of the insurer if it appears to the Liquidator that "there has been criminal or tortious conduct, or breach of any contractual or fiduciary obligation detrimental to the insurer by any officer, manager, representative, insurance producer, employee, or other person." SDCL § 58-29B-34. Similarly, SDCL §§ 58-29B-42[4] and 58-29B-49[5] authorize the Liquidator to pursue any right of action belonging to the insolvent insurer.

On December 17, 2020, a little more than two years after first giving notice to XL Specialty of potential claims against the directors and officers of RHC and RSC, the Liquidator brought a lawsuit against those directors and officers. Doc. 48 at ¶ 27; Doc. 48-1. The parties have since reached a settlement agreement, under which the Liquidator obtained a final judgment of $10 million against the directors and officers of RSC. Doc. 48 at ¶¶ 30–33; Doc. 48-2. This case concerns whether XL Specialty must provide coverage for that judgment in excess of the primary policy coverage.

---

[4] SDCL § 58-29B-42 states: "The liquidator shall be vested by operation of law with the title to all property, contracts, and rights of action and all of the books and records of the insurer ordered liquidated, wherever located, as of the entry of the final order of liquidation." SDCL § 58-29B-42.

[5] SDCL § 58-29B-49(13) and (19) state: "The liquidator may . . . [p]rosecute any action which may exist on behalf of the creditors, members, policyholders, or shareholders of the insurer against any officer of the insurer, or any other person," and "[e]xercise and enforce all the rights, remedies, and powers of any creditor, shareholder, policyholder, or member." SDCL § 58-29B-49(13), (19).

## II. Discussion

This case presents a legal issue centered on the proper interpretation and application of SDCL § 58-29B-56. That statute provides in full:

> *Time periods in which liquidator may act for or institute action on behalf of insurer.* The liquidator may, upon or after an order for liquidation, within two years or such time in addition to two years as applicable law may permit, institute an action or proceeding on behalf of the estate of the insurer upon any cause of action against which the statute of limitations has not expired at the time of the filing of the petition upon which such order is entered. If, by any agreement, a period of limitation is fixed for instituting a suit or proceeding upon any claim, or for filing any claim, proof of claim, proof of loss, demand, notice, or the like, or where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in the proceeding or by applicable law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case the period had not expired at the date of the filing of the petition, the liquidator may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the insurer, within a period of one hundred eighty days subsequent to the entry of an order for liquidation, or within such further period as is shown to the satisfaction of the court not to be unfairly prejudicial to the other party.

SDCL § 58-29B-56 (emphasis in original). The Liquidator contends that the second sentence of SDCL § 58-29B-56 gives the Liquidator an additional 180 days from the entry of the liquidation order to provide notice of the claims to XL Specialty. The Liquidator points to the need for the Liquidator when taking over an insolvent insurer to have time to investigate what coverage and claims exist and to give notice of claims. The Liquidator reasons that because its notice of November 1, 2018, was timely under the statute, coverage under the claims-made XL Specialty policy exists regardless of the policy's claims-made period ending July 1, 2018. After all, "[w]here it is necessary to review an insurance policy provision in light of statutory law, the court treats the statute as if it were actually written into the policy. The terms of the policy are to be construed in light of the purposes and intent of the applicable statute." State Farm Mut. Auto. Ins. Co. v. Vostad, 520 N.W.2d 273, 275–76 (S.D. 1994) (cleaned up and citation omitted).

XL Specialty reads SDCL § 58-29B-56 as applying to limitations periods and making sense to extend time for notice under occurrence coverage, but not as a mechanism to extend free insurance coverage to the Liquidator after the claims-made policy period ends without purchase of tail or optional extension coverage. XL Specialty stresses that nowhere in the statute is there any mention to extend coverage for 180 days or any such time. XL Specialty cites caselaw enforcing claims-made time limits in policies from multiple courts including the District of South Dakota. Doc. 32 at 11-13; see S.D. Network, LLC v. Twin City Fire Ins. Co., 4:16-CV-04031-KES, 2017 WL 4233019 (D.S.D. Sept. 22, 2017).

The Supreme Court of South Dakota has never discussed SDCL § 58-29B-56, much less considered whether—in the context of a claims-made insurance policy—the statutory language giving a liquidator additional time to file claims or take other such action can extend the coverage period beyond what the insured purchased. When a state's highest court has not spoken on an issue, district courts exercising diversity jurisdiction "must attempt to predict" what the state court would do. Jurrens v. Hartford Life Ins. Co., 190 F.3d 919, 922 (8th Cir. 1999) (citation omitted). When making such a prediction, district courts "may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data." Id. (cleaned up and citation omitted). There is a dearth of any such guiding authority on which to make a reliable prediction here.

The Liquidator cites to similarly worded statutes in other states and a handful of cases interpreting those statutes. Doc. 26 at 7-8; see Pa. Stat. and Cons. Stat. Ann. § 221.26(b) (tolling statute of limitations for two years from date of petition for liquidation); Colonial Assurance Co. v. Mercantile & Gen. Reinsurance Co., 297 F. Supp. 2d 764, 769 (E.D. Pa. 2003) (interpreting Pa. Stat. and Cons. Stat. Ann. § 221.26(b)); N.C. Gen. Stat. § 58-30-130(b); State ex rel. Long v. ILA Corp., 513 S.E. 2d 812, 817 (N.C. Ct. App. 1999); State ex rel. Long v. Petree Stockton, LLP, 499

S.E. 2d 790, 796 (N.C. Ct. App. 1998) (discussing extension of statute of limitations after petition for liquidation); Wis. Stat. § 645.49(2); McNamee v. Ernst, 364 N.W. 2d 182 (Table) (Wis. Ct. App. 1985); 215 Ill. Comp. Stat. Ann. 5/194(b) (containing similar first sentence as SDCL § 58-29B-56). All of these cases cited, however, address extensions of statutes of limitations, which is the part of SDCL § 58-29B-56 not at issue here. None of these cases confronts whether language akin to the second sentence of SDCL § 58-29B-56, by extending time to the Liquidator to file claims and take other such acts, extends coverage beyond the coverage period in a claims-made policy.

XL Specialty claims that the Receiver's Handbook for Insurance Company Insolvencies[6] (the "Handbook") published by the National Association of Insurance Commissioners (NAIC) supports its position. The NAIC's Handbook discusses provisions akin to SDCL § 58-29B-56, but does not address the issue framed in this case. See Handbook at 502. XL Specialty infers that such provisions do not extend coverage past the claims period because, when discussing Errors and Omissions (E&O) and Directors and Officers (D&O) policies, the Handbook states:

> Many companies purchase [E&O] and [D&O] policies, which may provide coverage for certain types of conduct described above. As part of the investigative examination, all [such] policies should be found and examined. These policies will almost certainly be claims made policies and should be reviewed to determine the deadline for notifying the carrier concerning possible claims. Additionally, the policies may provide for the purchase of tail coverage to extend the time to file a claim.

Handbook at 591.

The Liquidator notes that, unlike other states' statutes which extend time for making a claim by merely 60 days, SDCL § 58-29B-56 extends 180 days to the Liquidator. Therefore, the

---

[6] The Handbook is available at:
https://www.naic.org/documents/prod_serv_fin_receivership_rec_bu.pdf.

Liquidator did not need to purchase tail coverage—or in the parlance of XL Specialty, an optional extended period—when notice was made within the 180 days granted by the statute. The Handbook ultimately is not precedent and aids little in interpreting SDCL § 58-29B-56.

The Liquidator draws a comparison between SDCL § 58-29B-56 and 11 U.S.C. § 108(b) of the Federal Bankruptcy Code, noting that some state court decisions have cited to bankruptcy cases when interpreting insurance liquidation statutes. Doc. 37 at 5; see State ex rel. Wagner v. Gilbane Bldg. Co., 757 N.W. 2d 194 (Neb. 2008); Wilcox v. CSX Corp., 70 P.3d 85, 88 (Utah 2003); Koken v. Fid. Mut. Life Ins. Co., 803 A.2d 807, 816–17 (Pa. Commw. Ct. 2002). Because a domestic insurance company is ineligible to be a debtor in a federal bankruptcy proceeding under 11 U.S.C. § 109(b)(2), states fill that void by adopting their own conservatorship, receivership, and liquidation statutes for domestic insurers sometimes patterned off provisions of the bankruptcy code. See Capstone Bldg. Corp. v. Am. Motorist Ins. Co., No.: 2:08-CV-0874-RDP, 2013 WL 12250149, *2 (N.D. Ala. 2013).

The most analogous case either this Court or the parties could find is Federal Insurance Co. v. Sheldon, 150 B.R. 314, 316 (S.D.N.Y. 1993), which arose out of a bankruptcy proceeding and involved 11 U.S.C. § 108(b). In Sheldon, a trustee was appointed on August 13, 1985, to oversee the liquidation of a securities brokerage company. Id. at 316. Roughly four years later, the trustee brought a lawsuit on behalf of the company against the company's chief executive officer (CEO) for breach of contract and fiduciary duties. Id. at 315–16. The company's CEO was insured under a directors and officers policy for claims made during the policy period and for claims brought after the policy period provided that the conduct underlying the claim occurred and was reported to the insurance company during the policy period.[7] Id. at 316. In other words, the

---

[7] Specifically, the policy provided that coverage extends to

10

policy was a "claims made and reported" policy. Id. at 317. Thus, the policy provided coverage for the claims the trustee brought against the CEO only if the trustee gave the insurer written notice during the policy period of material facts or circumstances giving rise to the claims at issue in the underlying action. Id.

The original policy period in Sheldon was in effect through September 23, 1985. Id. However, there was a provision in the policy that allowed the insurer to terminate the policy early. Id. Under that provision, the insurer could give the company notice of early termination, and the policy would terminate 30 days after the company's receipt of such notice. Id. Invoking that provision, the insurer sent notice to the company of its election to terminate the policy on August 1. Id. The insurer claimed that the company had received this notice on August 5, and therefore, the policy actually terminated on September 5, not September 23. Id. The trustee had sent notice of the potential claims against the CEO on September 9, so whether the insurer's notice of termination was effective was the primary issue before the court. Id. The insurer argued there was no coverage under the policy for the trustee's claims against the CEO because the trustee failed to report a potential claim before the policy period had terminated on September 5. Id. at 317. The court in Sheldon held that the insurer's notice of early termination to the company was ineffective,

---

all Loss for which [an] Insured Person becomes legally obligated to pay on account of any claim(s) made against him, individually or otherwise, during or after the Policy Period for a Wrongful Act:
(A) committed, attempted or allegedly committed or attempted by such Insured Person(s) before or during the Policy Period and
(B) reported to [the insurer], in accordance with Section 4, during the Policy Period . . . .
Id. at 316–317 (alterations in original). In turn, Section 4 of the policy provided that "any insured can give notice of a potential claim and that notice is deemed given 'at the time that any Insured first gives written notice to [insurer] of the material facts or circumstances having the potential of giving rise to a claim being made against any Insured Person(s).'" Id. at 317 (second alteration in original).

11

so the policy terminated on September 23. Id. at 319–20. As such, the trustee's notice to the insurer on September 9 was timely and coverage existed. Id. at 320.

What makes Sheldon analogous, however, is the court's consideration of the trustee's other argument that notice of the claims would have been timely even if the policy had terminated on September 5, before the September 9 notice. Id. at 320–21. The court held that even in that event, § 108 of the Bankruptcy Code extended the period of time for the trustee to give notice of potential claims. Id. at 321. Section 108 of the Bankruptcy Code provides as follows:

> [I]f . . . an agreement fixes a period within which the debtor . . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> >
> > (2) 60 days after the order for relief.

11 U.S.C. § 108(b). The trustee in Sheldon argued that even if the policy terminated on September 5, § 108 allowed him an additional 60 days from the filing of the petition, which occurred on August 13, to file notice of potential claims against the CEO. 150 B.R. at 318. The insurer countered that § 108 does not operate to extend coverage. Id. at 321. The court in Sheldon sided with the trustee, noting that "the Trustee does not seek an extension of the *coverage* of the policy; rather, the Trustee merely requires an extension of the period in which it may report potential claims." Id. The court further stated:

> [T]he language of section 108 explicitly states that the debtor is entitled to an extension of time in which to provide "notice." 11 U.S.C. § 108(b). The Bankruptcy Act has been designed to provide the Trustee a limited time period in which to doing certain acts, which the debtor has failed to do, in order to preserve the debtor's rights. This is exactly the situation presented in the case at bar.

Id.

It is this alternative holding in Sheldon on which the Liquidator in this case relies. The Liquidator asks this Court to interpret SDCL § 58-29B-56 in the same way that the Southern District of New York interpreted § 108 of the Bankruptcy Code. The statutes contain similar language, and indeed "[m]ost, if not all, state insurance liquidation statutes were based on federal bankruptcy law." Wilcox, 70 P.3d at 92.

Of course, the insurance policy agreement in Sheldon was important in the court's decision. That agreement contained a notice provision that allowed coverage for a claim made after termination of the policy period provided that the conduct underlying the claim occurred and is reported to the insurer during the policy period. Sheldon, 150 B.R. at 316–317. In other words, the agreement fixed a period within which the insured could provide notice. Section 108 allowed the trustee 60 additional days from the filing of the petition to provide notice. Thus, the court viewed § 108 as merely providing additional time to give notice, not coverage that was not paid for.

The Liquidator argues that the insurance policy agreement in this case contains similar language. In the primary policy issued by Pioneer and incorporated into the XL Specialty policy, there is a provision entitled, "NOTICE," and Subsection D of that provision states:

> If the **Insureds** . . . become aware of a specific fact, circumstance or situation which could reasonably give rise to a **Claim, Investigation** or **Inquiry** . . . and if the **Insureds** during the **Policy Period** give written notice to Underwriters of:
>
> (a) the specific fact, circumstance, situation . . .
> (b) the consequences which have resulted or may result therefrom; and
> (c) the circumstances by which the **Insureds** first became aware thereof,
>
> Then any **Claim** made . . . arising out of such fact, circumstance, situation . . . shall be deemed for the purposes of this Policy to have been made, commenced or reported at the time such notice was first given.

Doc. 23-2 at 51–52. This language permits an insured to recover for a claim made after the policy period ends so long as the insured gives written notice during the policy period and that notice meets the requirements of Subsection D.

XL Specialty, however, argues that the policy language at issue here is distinguishable from that found in <u>Sheldon</u>. <u>See</u> Doc. 40 at 9–10. XL Specialty notes that no other court has cited or followed the alternative holding in <u>Sheldon</u>. Doc. 40 at 9. Whether the Supreme Court of South Dakota would use the alternative holding in <u>Sheldon</u> as persuasive authority to guide interpretation of SDCL § 58-29B-56 is hard for this Court to predict.

This Court may certify a question of law to the Supreme Court of South Dakota "if there are questions of law of [the State of South Dakota] involved in any proceeding before the certifying court which may be determinative of the cause pending in the certifying court and it appears to the certifying court and to the Supreme Court [of South Dakota] that there is no controlling precedent in the decisions of the Supreme Court of this state." SDCL § 15-24A-1. A question of law exists here whether SDCL § 58-29B-56, in providing a liquidator with up to 180 days from the order of liquidation to give notice of claim, thereby enlarges the coverage period of a claims-made policy. The answer to that question is likely determinative of whether the Liquidator's notice was timely so that XL Specialty must extend its excess coverage to pay on the judgment the Liquidator ultimately obtained against the directors and officers. Because there are no controlling decisions by the Supreme Court of South Dakota on this question and besides possibly the alternative holding in <u>Sheldon</u>, an absence of case law from other jurisdictions on this question, this Court therefore will certify that question to the Supreme Court of South Dakota. Certification of that question not only properly defers to the Supreme Court of South Dakota in interpreting as a matter of first impression SDCL § 58-29B-56, but also avoids a situation where both this Court and likely the

United States Court of Appeals for the Eighth Circuit on appeal attempt to predict how the Supreme Court of South Dakota would interpret SDCL § 58-29B-56. See Knowles v. United States, 29 F.3d 1261, 1265 (8th Cir. 1994) (explaining that a "proper deference to the authority of the Supreme Court of South Dakota" counseled the Eighth Circuit to certify a question on the state constitution to that court).

### III.  Conclusion

For the reasons stated above, it is hereby

ORDERED that under SDCL § 15-24A-1, this Court certifies the following question to the Supreme Court of South Dakota:

> Does SDCL § 58-29B-56, in giving the Liquidator 180 additional days from the order of liquidation to give notice of a potential claim, thereby enlarge the coverage period under a claims-made insurance policy past the end of the policy period? That is, was the Liquidator's notice of claim given on November 1, 2018, within 180 days of the order of liquidation but four months after the end of the XL Specialty claims-made policy coverage period both timely and triggering of coverage under the policy?

It is further

ORDERED that the Clerk of Court shall forward this certification order under official seal to the Supreme Court of South Dakota, under SDCL § 15-24A-5. It is further

ORDERED that this case will be stayed while the certified question is pending before the Supreme Court of South Dakota.

DATED this 1st day of June, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE