#29663-MES
**2022 S.D. 51**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

SUPREME COURT
STATE OF SOUTH DAKOTA
FILED

AUG 2 4 2022

*Chief A Johnson Legal*
Clerk

\* \* \* \*

In the Matter of the CERTIFICATION OF A QUESTION OF LAW FROM THE
UNITED STATES DISTRICT COURT, DISTRICT OF SOUTH DAKOTA,
CENTRAL DIVISION, Pursuant to the Provisions of SDCL 15-24A-1, and
Concerning Federal Action Civ. 3:20-cv-03009-RAL, Titled as Follows:

\* \* \* \*

LARRY DEITER, Director of
Insurance of the State of South
Dakota, as Liquidator of
RELIAMAX SURETY COMPANY,
in Liquidation,                                Plaintiff,

v.

XL SPECIALTY INSURANCE CO.,          Defendant.

\* \* \* \*

ORIGINAL PROCEEDING

\* \* \* \*

STEVEN W. SANFORD of
Cadwell, Sanford, Deibert
  & Garry, LLP
Sioux Falls, South Dakota

FRANK A. MARNELL of
South Dakota Division of Insurance
Pierre, South Dakota                          Attorneys for plaintiff.

\* \* \* \*

STATE OF SOUTH DAKOTA
In the Supreme Court
I, Shirley A. Jameson-Fergel, Clerk of the Supreme Court of
South Dakota, hereby certify that the within instrument is a true
and correct copy of the original thereof as the same appears
on record in my office. In witness whereof, I have hereunto set
my hand and affixed the seal of said court at Pierre, S.D. this
_____ day of _____, 20___.

_____
Clerk of Supreme Court
Deputy

ARGUED ON
NOVEMBER 8, 2021
OPINION FILED **08/24/22**

\* \* \* \*

EDWIN E. EVANS
MARK W. HAIGH of
Evans, Haigh & Hinton, LLP
Sioux Falls, South Dakota

JASON C. REICHLYN
THOMAS J. JUDGE of
Dykema Gossett PLLC
Washington, D.C.                                    Attorneys for defendant.

#29663

SALTER, Justice

[¶1.]          This matter is before us as two certified questions of law from the

United States District Court for the District of South Dakota,[1] asking whether

SDCL 58-29B-56 provides a state insurance liquidator an additional 180 days to

provide notice of a claim under a claims-made professional liability policy.[2] We hold

that it does.

## Background

### *State Regulation of the Insurance Industry*

[¶2.]          At the outset, we set this case within the larger legal context by noting

that the regulation of the insurance industry is generally a matter of state law.

Congress has expressly recognized as much by enacting the McCarran-Ferguson Act

which acknowledges state preeminence, subject only to a handful of exceptions not

applicable here. *See* 15 U.S.C. § 1012(a). As a result, insurers that become

insolvent are subject to state regulation and may not seek protection under the

United States Bankruptcy Code (Bankruptcy Code). *See Callon Petroleum Co. v.

Frontier Ins. Co.*, 351 F.3d 204, 208–09 (5th Cir. 2003) ("Congress has evinced a

strong federal policy in favor of *deferring* to state regulation of insolvent insurance

companies . . . and the express exclusion of insurance companies from the federal

Bankruptcy Code." (citation omitted)).

---

1.     The Honorable Roberto A. Lange, Chief United States District Judge.

2.     We are specifically authorized to "answer questions of law certified to it by
       the Supreme Court of the United States, a court of appeals of the United
       States, or a United States district court[.]" SDCL 15-24A-1.

-1-

#29663

[¶3.]        Consistent with the primacy of state regulation over the insurance

industry, our Legislature has enacted statutory procedures allowing state officials

to supervise or rehabilitate financially distressed insurers. Regulators are also

authorized, where necessary, to liquidate an insolvent insurer's assets and pay

remaining claims. *See* SDCL ch. 58-29B (entitled, "Insurers Supervision,

Rehabilitation and Liquidation"). This latter, terminal type of intervention—

liquidation—is commenced with a petition filed by the director of insurance after

determining that efforts to rehabilitate an insolvent insurer have proven

unsuccessful or would be futile. SDCL 58-29B-39. If the petition is granted, the

circuit court enters an order of liquidation which, among other things, contains the

appointment of a liquidator. SDCL 58-29B-42.

[¶4.]        The liquidator is vested with broad statutory authority to take title

and control of the insurer's assets, including "all property, contracts, and rights of

action . . . as of the entry of the final order of liquidation." *Id.*; *see also* SDCL 58-

29B-49 (listing powers of the liquidator). As it relates to the certified questions

here, the liquidator is statutorily authorized to "prosecute and institute in the name

of the insurer or in the liquidator's name any and all suits and other legal

proceedings" and specifically to "[p]rosecute any action which may exist on behalf of

the creditors, members, policyholders, or shareholders of the insurer against any

officer of the insurer[.]" SDCL 58-29B-49(12) to (13).

### *ReliaMax Surety Company's Insolvency and Liquidation Proceedings*

[¶5.]        On June 12, 2018, South Dakota Director of Insurance Larry Deiter

filed a petition for an order of liquidation of ReliaMax Surety Company (RSC) in

-2-

#29663

Hughes County, which is within the Sixth Judicial Circuit. The circuit court entered an order of liquidation on June 27, 2018, declaring RSC to be insolvent and directing RSC's liquidation. The court appointed Deiter to serve as the liquidator (the Liquidator) with the full measure of statutory authority set out in SDCL chapter 58-29B.

[¶6.]    RSC is a subsidiary of ReliaMax Holding Company (RHC), which had earlier obtained for itself and its subsidiaries two insurance policies providing directors and officers (D&O) liability coverage. The primary policy was with Pioneer Special Risk Insurance Services, Inc. (Pioneer)[3] and was subject to a liability limit of $3 million.

[¶7.]    The second, excess policy was issued by XL Specialty Insurance Company (XL Specialty) and provided an additional $2 million limit of D&O liability coverage. Both were claims-made policies and provided coverage for the policy period of July 1, 2017, through July 1, 2018.[4] RHC later paid to extend the Pioneer policy through July 1, 2021. It did not purchase an optional extension period for the XL Specialty policy, though it is unclear if such an option was available.

---

3.    The Liquidator's brief refers to Pioneer as the insurer of the primary policy. However, the policy lists the insurer as "certain Underwriters at Lloyd's, London." It appears Pioneer was Lloyd's underwriting agent. For ease of reference, the policy will be called the Pioneer policy.

4.    "The basic distinction between 'claims made' and 'occurrence policies' is that while the occurrence policy is triggered by the insured's liability-producing conduct, the claims made policy is triggered by the presentation of a claim." 43 Am. Jur. 2d *Insurance* § 681 (database updated August 2022).

[¶8.]      The underlying Pioneer policy issued to RHC defines the insured

"Company" as "the Parent Company" and "any Subsidiary." An "Insured" is

defined, under the XL Specialty policy, as "those persons or organizations

designated as insureds in the Underlying Insurance." "Insured Persons," as defined

in the Pioneer policy, include "all persons who were, now are, or shall be directors,

officers or risk managers of the Company." Many of the underlying Pioneer policy's

provisions are incorporated into the XL Specialty policy.

[¶9.]      In this regard, the Pioneer policy and, in turn, the XL Specialty policy

provide that "Insured Persons" are afforded coverage for "Loss resulting from any

Claim first made against the Insured Persons during the Policy Period . . . for a

Wrongful Act . . . ." The controlling definition of a "Wrongful Act" for both policies is

"any actual or alleged act, error, omission, misstatement, misleading statement,

neglect or breach of duty . . . by any of the Insured Persons, while acting in their

capacity as such[.]" The Pioneer policy and the XL Specialty policy allow the

Insured to recover for a claim made after the policy period ends so long as written

notice was received during the policy period. Finally, both policies require that

"Insureds shall give to Underwriters notice in writing of any Claim . . . as soon as

practicable . . . , but in no event later than[ ] sixty (60) days after the end of the

Policy Period . . . ."

[¶10.]     On November 1, 2018, four months after XL Specialty's policy period

ended, the Liquidator sent Pioneer and XL Specialty a letter providing notice of a

claim. The letter to XL Specialty alleged various wrongful acts by officers and

directors of RHC, including the claim that RSC loaned RHC more than $21 million

-4-

#29663

without a discernible means for repayment.[5] The letter further stated that "[a] claim has been filed under the [Pioneer] Policy, and given the size of the claim, it will exhaust the $3 million available policy limit." Pioneer did not contest the timeliness of the claim. However, XL Specialty, in a response letter dated November 28, 2018, stated, "Based upon the limited information provided, it does not appear that this matter constitutes a Claim first made in the Policy Period, as required by the Insuring Agreement of the XL Policy."

[¶11.]     The Liquidator, in letters to XL Specialty, dated April 4, 2019 and October 21, 2019, stated his view that the November 1, 2018 notice of claim was timely because it was filed within 180 days of the June 27, 2018 liquidation order. The legal basis for his position, the Liquidator explained, was SDCL 58-29B-56, which provides in relevant part:

> If, by any agreement, a period of limitation is fixed for
> instituting a suit or proceeding upon any claim, or for filing any
> claim, proof of claim, proof of loss, demand, notice, or the like, or
> where in any proceeding, judicial or otherwise, a period of
> limitation is fixed, either in the proceeding or by applicable law,
> for taking any action, filing any claim or pleading, or doing any
> act, and where in any such case the period had not expired at
> the date of the filing of the petition, the liquidator may, for the
> benefit of the estate, take any such action or do any such act,
> required of or permitted to the insurer, within a period of one
> hundred eighty days subsequent to the entry of an order for
> liquidation, or within such further period as is shown to the

---

5.     The November 2018 letter followed the commencement of a South Dakota state court action by the Massachusetts Institute of Technology Federal Credit Union (MITFCU), alleging similar claims. In its complaint, MITFCU stated that it had purchased insurance from RSC and that RSC's insolvency had "caused damage to [MITFCU's] student loan portfolio[.]" Ultimately, the Liquidator successfully moved to dismiss MITFCU's complaint, alleging MITFCU lacked standing because the claims asserted belong exclusively to the Liquidator under SDCL 58-29B-49.

#29663

> satisfaction of the court not to be unfairly prejudicial to the
> other party.

[¶12.]     On December 17, 2020, the Liquidator commenced an underlying

action against the directors and officers of RHC and RSC, alleging that the directors

and officers provided bonus payments while insolvent, wrongfully deprived RSC of

the ability to fund other ventures, provided misleading financial information,

manipulated loan servicing responsibilities, and abused intra-organization

borrowing power. The parties executed a settlement agreement, which granted the

Liquidator a final judgment of $10 million against the directors and officers. The

Liquidator agreed not to execute the judgment and received an assignment of the

directors' and officers' claims for coverage under the XL Specialty excess policy. XL

Specialty refused to pay, asserting the Liquidator's November 1, 2018 notice of

claim was untimely because it was not filed within the policy period.

[¶13.]     The Liquidator originally filed this current action against XL Specialty

in circuit court. The initial complaint sought, among other things, a declaration

that XL Specialty was liable "under the XL Policy for the claims asserted in the

[Liquidator's] notices[.]" XL Specialty removed the action to federal court, citing

diversity of citizenship as the basis for federal subject matter jurisdiction. *See* 28

U.S.C. § 1332.

[¶14.]     The Liquidator moved to remand the case to state court based upon its

claim that the federal court should abstain from determining state law questions

relating to the liquidation of insolvent insurers, given the comprehensive statutory

procedures enacted by our Legislature. However, the district court determined that

the narrower question presented by the Liquidator's complaint related only to an

#29663

issue of timeliness and did not implicate a complex area of state regulation. *Deiter v. XL Specialty Ins. Co.*, 488 F. Supp. 3d 881, 888–89 (D.S.D. 2020).

[¶15.]    In an amended complaint, the Liquidator sought a declaration of the following:

> 1)    the claims described in the Liquidator's notices occurred and were made prior to effective expiration of the XL Policy;
>
> 2)    the Liquidator's notices of claims are sufficient and timely under the XL Policy and applicable law;
>
> 3)    the claims described in the Liquidator's notices are covered by the XL Policy.

[¶16.]    The Liquidator moved for judgment on the pleadings, and XL Specialty moved for summary judgment. Both motions implicated the principal question in this case—the timeliness of the Liquidator's claim seeking D&O coverage. After considering the parties' briefs, the district court concluded the scarcity of decisional law justified certifying the following questions:

> Does SDCL § 58-29B-56, in giving the Liquidator 180 additional days from the order of liquidation to give notice of a potential claim, thereby enlarge the coverage period under a claims-made insurance policy past the end of the policy period? That is, was the Liquidator's notice of claim given on November 1, 2018, within 180 days of the order of liquidation but four months after the end of the XL Specialty claims-made policy coverage period both timely and triggering of coverage under the policy?

[¶17.]    In its submissions to this Court, the Liquidator maintains that the statute's plain language grants a liquidator 180 days after entry of an order for liquidation to provide notice of a claim and that the November 1, 2018 letter falls within the statutory timeframe. Augmenting its textual argument, the Liquidator asserts that state insurance laws are modeled after federal bankruptcy statutes

#29663

that contemplate comparable authority for a bankruptcy trustee.  Specifically, the

Liquidator cites 11 U.S.C. § 108(b), which provides in part:

> [I]f . . . an agreement fixes a period within which the debtor or
> an individual protected under section 1201 or 1301 of this title
> may file any pleading, demand, notice, or proof of claim or loss,
> cure default, or perform any other similar act, and such period
> has not expired before the date of the filing of the petition, the
> trustee may only file, cure, or perform, as the case may be,
> before the later of - -
>
> (1) the end of such period, including any suspension of such
> period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

[¶18.]    The Liquidator also cites *Federal Insurance Company v. Sheldon*, 150

B.R. 314, 321 (S.D.N.Y. 1993) as an application of § 108(b) in which a bankruptcy

court allowed the trustee to assert a timely claim for coverage under a claims-made

D&O liability policy, despite the fact that the notice appeared to come after the

expiration of the policy period.  The bankruptcy court stated,

> [T]he language of section 108 explicitly states that the debtor is
> entitled to an extension of time in which to provide "notice." 11
> U.S.C. § 108(b).  The Bankruptcy Act has been designed to
> provide the Trustee a limited time period in which to doing [sic]
> certain acts, which the debtor has failed to do, in order to
> preserve the debtor's rights.  This is exactly the situation
> presented in the case at bar.

*Id.*

[¶19.]    XL Specialty expresses the view that SDCL 58-29B-56 cannot be read

to "extend the period of coverage provided by the [XL Specialty] Policy, all without

the payment of a single penny in premium to XL Specialty for such coverage."

(Emphasis omitted.)  Asserting a lack of legislative history surrounding SDCL 58-

29B-56, XL Specialty argues that the Legislature could not have intended it to

#29663

apply to claims-made policies because the statute was enacted in 1989 and is

"patterned after largely identical statutes and provisions enacted by other states in

the 1970s, well before claims-made policies became a prevalent form of professional

liability insurance."

[¶20.]        XL Specialty makes an additional inferential argument, claiming that

the coverage period should not be extended because guidance contained in the

Receiver's Handbook for Insurance Company Insolvencies (Receiver's Handbook)

recommends liquidators purchase "tail coverage" to extend claims-made coverage.

The Receiver's Handbook does not, in other words, mention time-extension

provisions in liquidation statutes.

## Analysis and Decision

[¶21.]        The certified questions at issue require us to interpret the XL Specialty

insurance contract as well as SDCL 58-29B-56. "We interpret contracts and

statutes de novo." *In re Certification of a Question of Law from U.S. Dist. Court,

Dist. of S.D., S. Div.*, 2014 S.D. 57, ¶ 7, 851 N.W.2d 924, 926–27.

### *A Liquidator's Extension under SDCL 58-29B-56*

[¶22.]        "Statutory construction is an exercise to determine legislative intent."

*In re W. River Elec. Ass'n, Inc.*, 2004 S.D. 11, ¶ 15, 675 N.W.2d 222, 226.  In

resolving an issue of statutory interpretation, we begin with an analysis of the

statute's plain language.  *Winslow v. Fall River Cnty.*, 2018 S.D. 25, ¶ 12, 909

N.W.2d 713, 717.  "When a statute's language is clear, certain and unambiguous,

our function confines us to declare its meaning as plainly expressed."  *In re

Certification of a Question of Law from U.S. Dist. Court, Dist. of S.D., S. Div.*, 2010

-9-

S.D. 16, ¶ 10, 779 N.W.2d 158, 162 (citation omitted); *see also In re Appeal by Implicated Individual*, 2021 S.D. 61, ¶ 28, 966 N.W.2d 578, 586 (describing the command to "simply read the text and apply it" as the "cardinal rule of statutory interpretation").

[¶23.]     "[T]he scope of coverage of an insurance policy is determined from the contractual intent and the objectives of the parties as expressed in the contract." *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 9, 822 N.W.2d 724, 728 (citation omitted).  As indicated, however, insurance contracts are also regulated by state law, and we have held that:

> Where it is necessary to review an insurance policy provision in light of statutory law, the court treats the statute as if it were actually written into the policy. The terms of the policy are to be construed in light of the purposes and intent of the applicable statute.

*State Farm Mut. Auto. Ins. Co. v. Vostad*, 520 N.W.2d 273, 275–76 (S.D. 1994) (citation omitted) (cleaned up).

[¶24.]     We conclude the plain and unambiguous text of SDCL 58-29B-56 extends the coverage period for the XL Specialty policy. There is no "claims-made policy" exception in the language of the statute. Read as a whole, SDCL 58-29B-56 provides a liquidator 180 days to pursue claims like the one at issue here where the insurer and insured have agreed to a "period of limitation . . . for . . . filing *any* claim, proof of claim, proof of loss, demand, notice, or the like" and the limitation period "had not expired at the date of the filing of the petition." (Emphasis added.) *See Cent. Monitoring Serv., Inc. v. Zakinski*, 1996 S.D. 116, ¶ 24, 553 N.W.2d 513,

#29663

517 ("'Any' as used in a statute means 'all' or 'every' and suggests a broad and expansive meaning.").

[¶25.]        Here, the XL Specialty policy, which incorporates the Pioneer policy, fixed "a period of limitation" by requiring the Insureds to provide notice of a claim during the policy period, which ran from July 1, 2017, until July 1, 2018 and required notice be provided during that period.  Both the petition for liquidation and the order of liquidation were entered before the policy period expired.  As a result, the Liquidator acquired all of the rights of RSC, its directors and officers, and its policy holders prior to expiration of the coverage period, including the right to provide notice of a D&O claim within 180 days.

[¶26.]        Even if we were to look beyond the unambiguous provisions of SDCL 58-29B-56, we believe our interpretation aligns with the analogous authority granted to bankruptcy trustees by the Bankruptcy Code.  Indeed, the operative provisions of SDCL 58-29B-56 and 11 U.S.C. § 108(b) are comparable in form and function.  Both statutes, using remarkably similar text, extend the time for officials in conceptually similar insolvency proceedings to act in the place of another for the benefit of creditors or claimants.  The critical feature of each statute is the requirement that the insolvent party possessed the right to act when the proceeding was commenced, which is unquestionably the case here.[6]

---

6.        State courts often look to the Bankruptcy Code to assist in their effort to interpret laws relating to insurance liquidation. *See Wilcox v. CSX Corp.*, 70 P.3d 85, 92 (Utah 2003) (noting that "[m]ost, if not all, state insurance liquidation laws were based on federal bankruptcy law"); *Covington v. HKM Direct Mkt. Commc'ns, Inc.*, No. 03AP–52, 2003 WL 22784378 at *2 (Ohio App. Nov. 25, 2003) (emphasizing Ohio's liquidation provisions are modeled
(continued . . .)

#29663

[¶27.]     The bankruptcy court's application of § 108(b) in *Sheldon* set out above

is particularly instructive because the court applied the statute in the context of a

claims-made insurance policy.  In *Sheldon*, the court determined that § 108(b) did

not extend coverage under the claims-made policy but rather merely extended time

in which to report a potential claim.  150 B.R. at 321.

[¶28.]     The same is true here.  The provisions of SDCL 58-29B-56 apply to

allow an extension of time to provide notice under a policy fixing period of

limitation, without regard to whether the XL Specialty policy featured a claims-

made provision or not.[7]  By extending the deadline to 180 days, SDCL 58-29B-56

may well result in coverage that would otherwise not exist, but this is the apparent

intent of the statute—to allow the liquidator to mitigate the adverse consequences

of an insurer's insolvency by permitting additional time to assert or pursue claims

that would otherwise be time-barred.

[¶29.]     XL Specialty argues that the insuring agreement only imposes an

obligation on the Insurer to provide coverage for claims made during the policy

period, and that it does not place a period of limitation on the Insureds or

---

(. . . continued)

      after "the Federal Bankruptcy Act of 1898 and, accordingly, this court looks
      to federal bankruptcy law as an aid to interpreting the Ohio statutes"); *State*
      *ex rel. Wagner v. Gilbane Bldg. Co.*, 757 N.W.2d 194, 202 (Neb. 2008)
      (comparing cases arising under federal bankruptcy law to a state liquidation
      statute to aid in determining whether a party was insolvent at the time of
      payment to an obligee).

7.     The final clause of SDCL 58-29B-56 provides that the authority of the
      liquidator to act could extend to "such further period as is shown to the
      satisfaction of the court not to be unfairly prejudicial to the other party."
      However, this portion of the statute is not implicated by the district court's
      certified questions or the parties' arguments.

#29663

Liquidator to make a claim. Further, XL Specialty directs our attention to the statute's age, claiming that the statute was enacted before claims-made policies were widely used and that the more contemporary Receiver's Handbook recommends purchasing tail coverage to extend the time in which to file a claim.

[¶30.]        However, XL Specialty's arguments focus too narrowly on the precise type of contract at issue and overlook the plain text of both SDCL 58-29B-56 and the insurance policy which, by its terms, fixed a period of limitation. Indeed, XL Specialty's argument that the Liquidator is not simply giving notice of a pre-existing claim, but rather is making a claim outside of the policy period, is unconvincing because the statute does not make that distinction. Instead, SDCL 58-29B-56 applies to extend the Liquidator's time where the period of limitation is "fixed . . . for filing any claim, proof of claim, proof of loss, demand, notice, or the like[.]"

[¶31.]        In truth, XL Specialty's principal argument turns more on public policy than text. It argues that it is unfair to extend coverage of a claims-made policy without receiving payment for tail coverage. However, XL Specialty's argument is not easily reconciled with our rules for interpreting statutory text, and its claims of inequity seem better suited for an argument to amend SDCL 58-29B-56, not to interpret it.[8] As it is, the plain and unambiguous provisions of SDCL 58-29B-56 do

---

8.     We are keenly aware that the differences between occurrence and claims-made policies heighten the significance of notice under claims-made policies which, in turn, allows insurers "the ability to calculate risks and premiums with greater exactitude since the insurer's exposure ends at a fixed point, usually the policy termination date." *Zuckerman v. Nat'l Union Fire Ins. Co.*, 495 A.2d 395, 399–400 (1985). Nevertheless, SDCL 58-29B-56 says what it

(continued . . .)

not distinguish between claims-made and occurrence policies, but rather operate
immutably to extend the time to provide notice of a potential claim.

### Timely Notice

[¶32.]       While we may "answer questions of law certified to [this Court] by . . .
the United States district court," we cannot answer questions of fact. SDCL 15-
24A-1. We therefore cannot extend our authority to the second portion of the
certified question, which asks whether the Liquidator's November 1, 2018 notice of
claim was timely and triggered coverage under the policy. Beyond this, the parties'
submissions suggest that questions remain as to whether additional, more detailed
allegations described by the Liquidator in April and October of 2019 would relate
back to the November 1, 2018 notice because they describe "interrelated wrongful
acts."[9]

## Conclusion

[¶33.]       We answer the first sentence of the certified question in the
affirmative and decline to address the second part of the question.

[¶34.]       JENSEN, Chief Justice, and KERN and MYREN, Justices, and
PFEIFLE, Craig, Circuit Court Judge, concur.

---

(. . . continued)

   says, and we cannot overlook the text which allows an extension for "any
   claim."

9.   The Pioneer policy, and by incorporation the XL Specialty policy, provide that
     claims filed beyond the policy period may relate back to an earlier notice if
     the claim involves an "Interrelated Wrongful Act." According to the policies,
     an act is interrelated when it has "a common nexus [of] any fact,
     circumstance, situation, event, transaction or series of facts, circumstances,
     situations, events, or transactions."

#29663

[¶35.]        PFEIFLE, Craig, Circuit Court Judge, sitting for DEVANEY, Justice,

who deemed herself disqualified and did not participate.