UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| LARRY DEITER, DIRECTOR OF INSURANCE OF THE STATE OF SOUTH DAKOTA, AS LIQUIDATOR OF RELIAMAX SURETY COMPANY IN LIQUIDATION,<br><br>Plaintiff,<br><br>vs.<br><br>XL SPECIALTY INSURANCE CO.,<br><br>Defendant. | 3:20-CV-03009-RAL<br><br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE AND FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff Larry Deiter, Director of Insurance for the State of South Dakota, and as Liquidator for Reliamax Surety Company in Liquidation (the Liquidator), sued Defendant XL Specialty Insurance Co. (XL Specialty) to seek a declaratory judgment that the Liquidator gave timely and sufficient notice of claims under the XL Specialty insurance policy at issue and that such claims are covered under the insurance policy. The Liquidator also sought judgment against XL Specialty for $10 million less credits to cover a judgment taken against XL Specialty's insureds, as well as pay punitive damages, attorneys fees, and costs. Doc. 48 at 9. After XL Specialty included 29 separate affirmative defenses in its answer, the Liquidator filed a motion to strike affirmative defenses and in the alternative for partial summary judgment. Doc. 59. For the reasons explained herein, this Court grants in part and denies in part that motion. Doc. 1-1; Doc. 23; Doc. 48.

1

I.      **Background**

   **A. Procedural History**

   Plaintiff's motion to strike or alternatively for summary judgment on affirmative defenses is not the first substantive motion filed in this case. After this Court granted in part XL Specialty's motion to dismiss, Doc. 20, the Liquidator amended his complaint and filed a motion for judgment on the pleadings, Doc. 25. XL Specialty filed a motion for summary judgment, Doc. 31, and the Liquidator then filed a cross-motion for summary judgment in the alternative to his motion for judgment on the pleadings, Doc. 41. The pleadings and cross-motions for summary judgment framed a novel legal issue under SDCL § 58-29B-56. This Court chose to certify to the Supreme Court of South Dakota whether that statute, in granting the Liquidator 180 additional days from the entry of the order of liquidation to give notice of claim, thereby enlarged the coverage period of a claims-made policy despite no optional extension coverage being purchased.

   The Supreme Court of South Dakota determined that the statute in fact enlarged the coverage period of the XL Specialty policy to allow the Liquidator an additional 180 days to give notice, but declined to answer the second portion of the question certified by this Court about whether the notice given triggered coverage, deeming that question to involve a potential question of fact.[1] Deiter v. XL Specialty Ins. Co. (In re Matter of Certification of Question of Law), 980 N.W.2d 229 (S.D. 2022). XL Specialty then answered the Second Amended Complaint and raised

---

[1] The actual question certified was:
   Does SDCL § 58-29B-56, in giving the Liquidator 180 additional days from the order of liquidation to give notice of a potential claim, thereby enlarge the coverage period under a claims-made insurance policy past the end of the policy period? That is, was the Liquidator's notice of claim given on November 1, 2018, within 180 days of the order of liquidation but four months after the end of the XL Specialty claims-made policy coverage period both timely and triggering of coverage under the policy?

29 separate affirmative defenses. On December 9, 2022, this Court held a hearing on the Liquidator's pending motion, which XL Specialty opposes.

**B. Facts Not Subject to Genuine Dispute**

This case arises out of the insolvency of an insurer named ReliaMax Surety Company (RSC), which was a wholly-owned subsidiary of ReliaMax Holding Company (RHC), a Delaware corporation. Doc. 48 at ¶ 10. Before entry of the liquidation order, RHC procured and was party to, for itself and for the benefit of its subsidiaries including RSC, two insurance policies providing directors and officers liability insurance coverage. Doc. 33 at ¶ 1; Doc. 36 at ¶ 1; Doc. 48 at ¶ 11. The primary policy for directors and officers liability insurance coverage for the policy period of July 1, 2017, through July 1, 2018, was with Pioneer Special Risk Insurance Services, Inc. (Pioneer). Doc. 48 at ¶¶ 12, 14. RHC purchased an optional extension period to extend the policy period of the Pioneer policy through July 1, 2021. Doc. 34-5.

Defendant XL Specialty issued a policy for excess insurance coverage for directors and officers for claims made during the policy period of July 1, 2017, through July 1, 2018. Doc. 33 at ¶ 4; Doc. 36 at ¶ 4; Doc. 48 at ¶¶ 13–14. Neither RHC nor the Liquidator paid the premium[2] for an optional extension period to extend the XL Specialty claims-made policy period beyond July 1, 2018. Doc. 33 at ¶ 17; Doc. 36 at ¶ 17. The Liquidator's petition for liquidation of RSC was filed on or about June 12, 2018, in the final month of the XL Specialty policy period. Doc. 33 at ¶ 15; Doc. 36 at ¶ 15. The order of liquidation entered on June 27, 2018, just days before the end of the policy period in the XL Specialty policy. Doc. 33 at ¶ 15; Doc. 36 at ¶ 15.

---

[2] The premium for the policy period July 1, 2017, to July 1, 2018, was $60,000, and the premium for the optional extension period would have been $120,000. Doc. 34-1 at 2; Doc. 34-2 at 3, 23.

3

The XL Specialty policy provided a two-million-dollar limit of liability above the three million dollar underlying insurance coverage with Pioneer. Doc. 33 at ¶ 1; Doc. 36 at ¶ 1. The XL Specialty policy was clearly a claims-made policy and only applied to claims first made during the policy period. Doc. 23-3 at 1, 19; Doc. 33 at ¶ 2; Doc. 36 at ¶ 2. The XL Specialty policy incorporated the terms and conditions of the underlying Pioneer policy and defined the "Insured" as "those persons or organizations designated as insureds in the Underlying Insurance." Doc. 23-3 at 19; Doc. 33 at ¶ 3; Doc. 36 at ¶ 3. The underlying Pioneer policy in turn is issued to RHC, Doc. 23-2 at 1, and defined the insured "Company" to include "the Parent Company" and "any Subsidiary." Doc. 23-2 at 5; Doc. 33 at ¶ 7; Doc. 36 at ¶ 7. "Insureds" in the Pioneer policy included the Company and the Insured Persons. Doc. 23-2 at 8; Doc. 33 at ¶ 7; Doc. 36 at ¶ 7. In turn, "Insured Persons" in the underlying Pioneer policy included "all persons who were, now are, or shall be directors, officers or risk managers of the Company." Doc. 23-2 at 7. Finally, with regard to pertinent definitional provisions in the underlying Pioneer policy, "Wrongful Act" was defined to mean "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty . . . by any of the Insured Persons, while acting in their capacity as such, or any matter claimed against any of the Insured Persons solely by reason of their serving in such capacity." Doc. 23-2 at 12; Doc. 33 at ¶ 8; Doc. 36 at ¶ 8.

The underlying Pioneer policy, and in turn the XL Specialty policy, excluded any claim "by, on behalf of, or at the direction of the Company, any Insured Person in any capacity or by past, present or future security holder, partner, or member of the Company, *except and to the extent that*: . . . 2. Such Claim is brought in the event of the appointment of a trustee, examiner, receiver, liquidator, conservator, rehabilitator or similar official." Doc. 23-2 at 12–13 (emphasis added).

Thus, the policy did not exclude coverage per se for claims the Liquidator might have against insured directors and officers.

Four months after the claims-made policy period under the XL Specialty policy ended, on November 1, 2018, the Liquidator sent to XL Specialty and Pioneer a letter to provide notice of a claim. In the letter to XL Specialty, the Liquidator stated:

> Numerous Wrongful Acts by the Officers and Directors of [RHC] are being investigated. The most significant Wrongful Act of the Officers and Directors of [RHC] was their continuous advances from [RSC] of more than $21 million dollars, without the means for repayment.

Doc. 23-5 at 1; Doc. 33 at ¶ 18; Doc. 36 at ¶ 18. The Liquidator's letter continued:

> This immediate claim is to recover these Wrongful advances paid in an amount in excess of $21 million. A claim has been filed under the Primary Policy, and given the size of the claim, it will exhaust the $3 million available policy limit.

Doc. 23-5 at 1–2; Doc. 33 at ¶ 18; Doc. 36 at ¶ 18.

Pioneer did not contest the timeliness of the Liquidator's notice; after all, RHC had paid Pioneer for optional extension coverage. XL Specialty, however, in a response letter dated November 28, 2018, stated, "Based upon the limited information provided, it does not appear that this matter constitutes a Claim first made in the Policy Period, as required by the Insuring Agreement of the XL Policy."[3] Doc. 23-7 at 1. The decision of the Supreme Court of South Dakota disposes of that defense concerning the November of 2018 notice. Deiter, 980 N.W.2d 229. The November 2018 notice-of-claim letter was within 180 days of both the Liquidator's petition of June 12, 2018, and the order for liquidation of June 27, 2018. Doc. 48 at ¶ 19.

---

[3] The letter from XL Specialty in the CM/ECF record is a letter addressed to Michael J. FitzGibbons, who appears to have been the Liquidator appointed to RSC at the time. Docs. 23-6, 23-7.

5

Subsequent letters from the Liquidator to XL Specialty dated April 4, 2019, and October 21, 2019, elaborated on the initial notice of claim from November 2018. Doc. 23-6; Doc. 48 at ¶ 22. The April 4, 2019 letter referenced the "MIT Litigation," a fraud and deceit lawsuit filed in 2018 in state court against RSC, RHC, and their directors and officers by Massachusetts Institute of Technology Federal Credit Union. Docs. 23-6, 43-1. The letter dated October 21, 2019, discussed certain policy provisions and South Dakota statutes under which the Liquidator believed there should be coverage, and provided a more involved summary of what the Liquidator claimed to be wrongful conduct of directors and officers of RHC and RSC. Doc. 23-6 at 3–11. The wrongful conduct alleged in the October 2019 letter included bonus compensation authorized by the board of directors of RHC to RSC's chief executive officer of $540,674 during a time of RSC's insolvency; using funds of RSC to finance startup ventures by officers of RHC and thereby robbing RSC of cash; concealment by RSC's chief executive officer of certain business opportunities to protect his ownership stake from dilution thereby frustrating critical efforts to raise capital to replace monies wrongfully taken from RSC; misleading and erroneous accounting management resulting in a later adjustment of RSC's financial statements by a negative $38 million; abuse of intra-organization borrowing power, relating to the prior notice of some $20 million borrowed from RSC by RHC without the capability to repay; and a claimed manipulation of certain loan servicing, among other possible claims. Doc. 23-6 at 3–11. The decision of the Supreme Court of South Dakota left open the question of "whether additional, more detailed allegations described by the Liquidator in April and October of 2019 would relate back to the November 1, 2018 notice because they describe 'interrelated wrongful acts.'" In re Certification, 980 N.W.2d at 237.

Under SDCL § 58-29B-34, the Liquidator has the right to pursue all appropriate legal remedies on behalf of the insurer if it appears to the Liquidator that "there has been criminal or

tortious conduct, or breach of any contractual or fiduciary obligation detrimental to the insurer by any officer, manager, representative, insurance producer, employee, or other person." SDCL § 58-29B-34. Similarly, SDCL §§ 58-29B-42[4] and 58-29B-49[5] authorize the Liquidator to pursue any right of action belonging to the insolvent insurer.

On December 17, 2020, a little more than two years after first giving notice to XL Specialty of potential claims against the directors and officers of RHC and RSC, the Liquidator brought a lawsuit against those directors and officers. Doc. 48 at ¶ 27; Doc. 48-1. The parties have since reached a settlement agreement, under which the Liquidator obtained a final judgment of $10 million against the directors and officers of RSC. Doc. 48 at ¶¶ 30–33; Doc. 48-2. The Liquidator gave notice to XL Specialty of the settlement and entered into a settlement agreement described as a Miller-Shugart agreement.[6] XL Specialty disputes that the notice and agreement were proper or enforceable. Though there are some other issues and claims, this case essentially concerns whether XL Specialty must provide coverage for any part or all of that judgment in excess of the

---

[4] "The liquidator shall be vested by operation of law with the title to all property, contracts, and rights of action and all of the books and records of the insurer ordered liquidated, wherever located, as of the entry of the final order of liquidation." SDCL § 58-29B-42.

[5] "The liquidator may . . . . [p]rosecute any action which may exist on behalf of the creditors, members, policyholders, or shareholders of the insurer against any officer of the insurer, or any other person," and "[e]xercise and enforce all the rights, remedies, and powers of any creditor, shareholder, policyholder, or member." SDCL § 58-29B-49(13), (19).

[6] In Miller v. Shugart, the Supreme Court of Minnesota recognized as enforceable an agreement where a plaintiff and defendant settle in a way where the parties stipulate to a judgment, the defendant assigns the claim against defendant's insurer to the plaintiff, and the plaintiff agrees to collect only whatever amount it recovers from defendant's insurer. 316 N.W.2d 729, 735–36 (Minn. 1982). Many states have subsequently found such Miller-Shugart agreements to be enforceable. See W. Agric. Ins. Co. v. Arbab-Azzein, 940 N.W.2d 865, 867 n.2 (S.D. 2020) (approving Miller-Shugart agreements); D.E.M. v. Allickson, 555 N.W.2d 596 (N.D. 1996) (same); Metro. Prop. & Cas. Ins. Co. v. Auto-Owners Mut. Ins. Co., 924 N.W.2d 833, 845–46 (Iowa 2019) (same).

7

primary policy coverage and, if so, whether XL Specialty has acted in bad faith or vexatiously refused to pay what the policy covers.

XL Specialty's Answer and Affirmative Defenses to Second Amended Complaint, Doc. 64, admits some and denies other allegations of the second amended complaint. XL Specialty then pleads 29 separate affirmative defenses: 1) failure to state a claim; 2) policy terms, exclusions, conditions and limitations; 3) failure to satisfy conditions; 4) no "wrongful act;" 5) no "claim" first made during the "policy period;" 6) untimely notice; 7) laches/unclean hands; 8) accord and satisfaction; 9) release; 10) statute of limitations; 11) other insurance; 12) lack of standing; 13) no "loss;" 14) conduct exclusions; 15) other capacity exclusion; 16) representations; 17) failure to seek and obtain consent; 18) failure to allocate; 19) excluded sale of equity securities; 20) payable retention; 21) settlement unreasonable; 22) fraud or collusion; 23) additional defense; 24) no bad faith; 25) no vexatious or unreasonable conduct; 26) lack of causation; 27) damages caused by plaintiff or third parties; 28) plaintiff's or insureds' bad faith; 29) punitive damages unconstitutional. The Liquidator moves to strike these affirmative defenses or in the alternative for summary judgment on them. There has been no discovery to this point in the case and instead of the usual detailed statement of undisputed material facts from the moving party typically accompanying a summary judgment motion, the Liquidator filed a pleading that largely references documents attached to the Complaint or Second Amended Complaint. Doc. 60. In essence, the alternative request for summary judgment on affirmative defenses seems more like a motion for judgment on the pleadings than a conventional motion for summary judgment.

## II.   Discussion

### A. Motion to Strike Affirmative Defenses

Rule 12 of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may act on its own motion or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(1)–(2). A district court enjoys "liberal discretion to strike pleadings under Rule 12(f)," but motions to strike are viewed with disfavor and are infrequently granted. BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007); see also Stanbury Law Firm, P.A. v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000) (per curiam); 5C Charles A. Wright et al., Federal Practice & Procedure § 1380 (3d ed. 2010). "A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." Plan Pros, Inc. v. Joshua, Inc., CIV 13-4016, 2013 WL 4402357, at *1 (D.S.D. Aug. 14, 2013) (quoting Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977)). "Such motions should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." Poulos v. Summit Hotel Props., LLC, No. CIV 09-4062-RAL, 2010 WL 2034634, at *3 (D.S.D. May 21, 2010) (cleaned up and citation omitted).

"Rule 8(c) identifies a nonexhaustive list of affirmative defenses that must be pleaded in a response" to a complaint. Jones v. Bock, 549 U.S. 199, 212 (2007). Under Rule 8, defenses must be stated "in short and plain terms" and inconsistent pleading is allowed. Fed. R. Civ. P. 8(b)(1)(A), (d)(3). "If a party mistakenly designates a defense as a counterclaim, or a counterclaim

9

as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2); see also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). When deciding whether to strike a pleading, "the court must view the pleadings in the light most favorable to the pleading party." Nasuti v. Walmart, Inc., No. 5:20-CV-5023-LLP, 2021 WL 3403666, at *1 (D.S.D. Aug. 4, 2021). Defendants of course "are under no obligation to prove their affirmative defenses in their answer." Abdulrazzak v. Smith, No 4:17-CV-4058-KES, 2018 WL 4625409, at *11 (D.S.D. Sept. 26, 2018).

The United States Court of Appeals for the Eighth Circuit has not addressed whether the pleading requirements iterated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), apply to the assertion of affirmative defenses. Arbogast v. Healthcare Revenue Recovery Grp., 327 F.R.D. 267, 269 (E.D. Mo. 2018). District Courts within the Eighth Circuit have come to different conclusions as to whether Iqbal and Twombly apply to pleading affirmative defenses, though at least five different courts within the Eighth Circuit, including the District of South Dakota, have issued decisions declining to apply the heightened pleading requirements to affirmative defenses. See, e.g., Plan Pros, 2013 WL 4402357, at *2–3; Arbogast, 327 F.R.D. at 269–70; Summers Mfg. Co. Inc. v. Tri-County AG, LLC, 300 F. Supp. 3d 1025, 1044 (S.D. Iowa 2017); Infogroup, Inc. v. DatabaseLLC, 95 F. Supp. 3d 1170, 1192–94 (D. Neb. 2015); Wells Fargo & Co. v. United States, 750 F. Supp. 2d 1049, 1051–52 (D. Minn. 2010). But see Serv. Mgmt. Grp., LLC v. YouGov Am., Inc., No. 4:18-00819-CV-RK, 2020 WL 9171205, at *2 (W.D. Mo. Apr. 23, 2020) (applying the Iqbal and Twombly standards to the pleading of affirmative defenses).

Earlier this year, the Eighth Circuit stated that "[a]s long as 'an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with

Rule 8(c) is not fatal.'" Crutcher v. MultiPlan, Inc., 22 F.4th 756, 766 (8th Cir. 2022) (quoting First Union Nat'l Bank v. Pictet Overseas Tr. Corp., 477 F.3d 616, 622 (8th Cir. 2007)). Similarly, in a case predating both Twombly and Iqbal, the Eighth Circuit stated that "[t]he rules do not require a party to plead every step of legal reasoning that may be raised in support of its affirmative defense; they only require a defendant to state in short and plain terms its defenses to a plaintiff's claims." Wisland v. Admiral Beverage Corp., 119 F.3d 733, 737 (8th Cir. 1997) (finding that statute of limitations defense was adequately pled by stating "applicable statute of limitation" and not citing any statute); see also Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 361 (8th Cir. 1997) ("While a limitations defense must be asserted in a responsive pleading, it need not be articulated with any rigorous degree of specificity, and is sufficiently raised for purposes of Rule 8 by its bare assertion." (cleaned up and citations omitted)). In the even earlier case of Barnwell & Hays, Inc. v. Sloan, the Eighth Circuit allowed an affirmative defense of waiver even when the specific terminology was not used. 564 F.2d 254, 255–56 (8th Cir. 1977) (per curiam). Specifically, the Eighth Circuit found that the "Rules were designed to liberalize pleading requirements . . . . To hold that defendant's answer was insufficient to inject the issue of waiver into the case would impose a requirement of undue formalism which is inconsistent with that liberal purpose." Id. at 256. See also Crutcher, 22 F.4th at 766 (allowing an affirmative defense that "includes the bare assertion of a defense" (cleaned up and citations omitted)).

Because the language of Federal Rule of Civil Procedure 8(b)(1)(A) contemplates affirmative defenses plead "in short and plain terms" and based on the existing Eighth Circuit precedent, this Court—consistent with the Plan Pros case from a fellow district judge within the District of South Dakota—declines to extend the pleading requirements under Iqbal and Twombly to affirmative defenses. As such, Defendants have sufficiently plead their affirmative defenses.

11

Rule 8(c)(1) of the Federal Rules of Civil Procedure lists 18 matters that can be plead as affirmative defenses, and from this list XL Specialty has invoked accord and satisfaction, fraud, laches, release, and statute of limitations. Doc. 64. The remaining 24 affirmative defenses plead by XL Specialty are not listed in Rule 8(c)(1).

Rule 8(c)'s list of affirmative defenses is non-exhaustive. Rule 8(c) requires the affirmative stating of "any avoidance or affirmative defense." This reference "encompasses two types of defensive allegations: those that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and those that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer." Wright et al., supra, at § 1271; Black Hills Truck & Trailer, Inc. v. MAC Trailer Mfg., Inc., No. 13-CV-4113 (KES), 2017 WL 4236546, at *3 (D.S.D. Sept. 22, 2017); see also Fed. Deposit Ins. Corp. v. Main Hurdman, 655 F. Supp. 259, 262 (E.D. Cal. 1987) ("Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true") (citing Gomez v. Toledo, 446 U.S. 635, 640–41 (1980)). To find whether a defense falls into the "catchall" portion of Rule 8(c) "the court considers three factors: (1) the allocation of the burden of proof; (2) whether the defense denies or avoids the plaintiff's allegations; and (3) whether notice of the defense is required to avoid surprise and undue prejudice to the plaintiff." Norman v. Ritter-Rittenhouse Corp., No. 08-CIV-4189-KES, 2010 WL 3282619, at *4 (D.S.D. Aug. 19, 2010); see also Red Deer v. Cherokee Cnty, 183 F.R.D. 642, 652 (N.D. Iowa 1999) (listing the three factors for consideration).

So the first decision point is which, if any, affirmative defenses plead are simply not affirmative defenses and should be stricken. The first affirmative defense asserts failure to state a claim, which typically justifies filing a motion to dismiss and is not ordinarily considered an

affirmative defense, but that assertion is better considered on summary judgment. Many of the affirmative defenses—those enumerated as affirmative defenses 2, 3, 4, 5, 6, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 27 and 28—are various ways of asserting that there is an absence of coverage or coverage exclusions under the XL Specialty policy. The more conventional way of framing those issues would be through a counterclaim seeking a declaratory judgment that there is no coverage or an applicable coverage exclusion. But the issues of timely and sufficient notice of claims as well as coverage under the XL Specialty policy already are framed by the Second Amended Complaint. Now some of those affirmative defenses regarding absence or exclusion of coverage may be completely meritless, but that is more an issue on summary judgment or possibly trial where this Court presumably will be called upon to interpret and apply the language of the XL Specialty policy to facts not subject to genuine dispute or as determined by the Court at trial so as to render a declaratory judgment.

Defenses 7, 8, 9, 10 and 22 are recognized as affirmative defenses in Rule 8(c), and affirmative defense 29 about punitive damages being unconstitutional is, well, overstated as the Supreme Court of the United States has upheld punitive damages in civil cases so long as the amount is proportional to the underlying damage claim. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 576 (1996). This Court reads the twenty-ninth affirmative defense accordingly and does not strike it.

That leaves several plead affirmative defenses that plainly are not affirmative defenses and may be stricken. XL Specialty pleads lack of standing as its twelfth affirmative defense. Application of the three-prong test described above demonstrates that standing is not an affirmative defense. First, rather than with a typical affirmative defense, the plaintiff—and not the defendant—bears the burden to prove standing. Lujan v. Defenders of Wildlife, 504 U.S. 555,

561 (1992). Second, standing is "merely a denial of the plaintiff's jurisdictional allegations." Wright et al., supra, at § 1271 n.79 (citation omitted). Third, failing to raise standing in an answer does not risk unfair surprise or undue prejudice. After all, standing is a jurisdictional requirement that must be present at all stages of the litigation. Lujan, 504 U.S. at 561 (finding that jurisdictional elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case"). Unlike affirmative defenses that are waived if not alleged, standing cannot be waived. Wright et al., supra, at § 1271 n.2; Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc., No. 02 C 2523, 2003 WL 1720073, at *4 (N.D. Ill. Mar. 31, 2003). In short, lack of standing is not an affirmative defense.

Regardless, lack of standing can be raised by any party, or by the court, at any time during the litigation. Planned Parenthood Minn., N.D., S.D. v. Noem, 556 F. Supp. 3d 1017, 1022 (D.S.D. 2021). Despite lack of standing not being an affirmative defense, the standing requirement cannot be disregarded, and there is nothing wrong with raising lack of standing in an answer. Although this Court will strike the affirmative defense of standing, doing so does not eliminate the issue of standing from the case, nor preclude Defendant from arguing lack of standing in the future. See Perrin v. Papa John's Int'l, Inc., 114 F. Supp. 3d 707, 723 (E.D. Mo. 2015); Smith v. N. Star Charter Sch., Inc., No. CIV. 1:10-618 WBS, 2011 WL 3205280, at *2 (D. Idaho July 26, 2011). However, the allegations of the Second Amended Complaint establish that the Liquidator has standing at least at this stage of the case. The Liquidator has alleged an "injury in fact" that is "concrete and particularized" as well as "actual or imminent" rather than "conjectural or hypothetical"; the Liquidator has alleged "a casual connection between the injury and the conduct complained of"; and it is "likely" and not merely "speculative" that a favorable decision would redress the alleged injury. Lujan, 504 U.S. at 560–61

This Court also can strike the defenses enumerated 23, 24, 25 and 26 for the amorphous "additional defense," and for "no bad faith," "no vexatious or unreasonable conduct," and "lack of causation." Applying the same three factors to test if something is an affirmative defense, the Liquidator has the burden of proof on any claim of bad faith or vexatious and unreasonable refusal to pay, as well as to show causation. These assertions of affirmative defenses truly are nothing more than a denial of the Liquidator's allegation rather than an avoidance or affirmative defense. And there is no surprise to the Liquidator if such matters are not plead as affirmative defenses, because they are within what the Liquidator must prove to recover on certain claims made in the Second Amended Complaint.

**B. Summary Judgment on Affirmative Defenses**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) places the burden initially on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Once the moving party has met that burden, the nonmoving party must establish that a material fact is genuinely disputed either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012); see also Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials). A party opposing a properly supported motion for summary judgment "may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that

would permit a finding in his favor, without resort to speculation, conjecture, or fantasy." Reed v. City of St. Charles, 561 F.3d 788, 790–91 (8th Cir. 2009) (cleaned up and citations omitted). In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)). Thus, on the pending motion for summary judgment, XL Specialty is entitled to have the facts viewed in the light most favorable to it.

XL Specialty argues that it is premature to consider any motion for summary judgment on the affirmative defenses because it has not had an opportunity to conduct any discovery. The Liquidator responded in essence that no discovery is needed, a position this Court rejected at the motion hearing,[7] as did the Supreme Court of South Dakota implicitly at the end of its decision as a reason not to comment on the second part of the certified question. This Court has now entered a Scheduling Order allowing discovery. Doc. 75. Under Rule 56(d), a court may defer consideration of a summary judgment motion or deny it or allow time for discovery, though doing so typically is triggered by an affidavit showing specified reasons why facts essential to oppose summary judgment cannot be presented. When it comes to coverage issues and coverage-based defenses, this Court can foresee questions of law on which to rule, but the briefing by the parties was quite general and did not frame any such issues at this time.

---

[7] Counsel for the Liquidator at the motion hearing acknowledged that there were factual issues about whether the Miller-Shugart agreement was the product of fraud or collusion though maintaining it was not, as well as possible bad faith and damages. Counsel argued over some matters that may require rulings from this Court like whether the notice was sufficient or relation back of subsequent notices, coverage and possible coverage exclusions, and the validity and enforceability of the settlement arrangement as a Miller-Shugart agreement.

On this limited record and focusing only on facts that are not subject to genuine dispute, this Court believes that summary judgment is proper on the first affirmative defense of failure to state a claim; the Second Amended Complaint clearly does so especially when read in the aftermath of the Supreme Court of South Dakota decision on the certified question. This Court likewise views there to be no genuine issue of material fact and indeed no factual basis to support the affirmative defenses enumerated as 8 and 10 for accord and satisfaction or statute of limitations. The statute of limitations on contract-based claims in South Dakota is six years. SDCL § 15-2-13(1). And even if somehow the three-year statute of limitations applicable to injury to person were to apply to any claim under SDCL § 15-2-14(3), the complaint in this case was filed on March 12, 2020, within two years of XL Specialty's coverage period. Accord and satisfaction under South Dakota law requires an agreement between the creditor and debtor to extinguish the obligation and performance of that agreement. High Plains Genetics Rsch., Inc. v. J K Mill-Iron Ranch, 535 N.W.2d 839, 846 (S.D. 1995). XL Specialty can present its argument that the Miller-Shugart agreement was defective or served to release XL Specialty under the affirmative defense of "release," which this Court has preserved for now. But accord and satisfaction as a matter of law does not fit under the facts not subject to genuine dispute as XL Specialty has not entered into any agreement to extinguish what the Liquidator contends to be XL Specialty's obligation under the insurance policy. As for the remaining affirmative defenses not previously stricken, this Court thinks it premature to rule without allowing discovery and a more conventional motion for summary judgment and statement of undisputed material facts.

### III. Conclusion

For the reasons stated above, it is hereby

ORDERED that the Liquidator's motion to strike or in the alternative for summary judgment, Doc. 59, is granted in part and denied in part as explained above.

DATED this 20th day of December, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE